62 N.J. Super. 495 (1960)
163 A.2d 205
TRUST COMPANY OF MORRIS COUNTY, AS TRUSTEE OF A TRUST CREATED BY HONOR BARR DOUGLAS UNDER DATE OF JULY 5, 1935, PLAINTIFF,
v.
JOHN NICHOLS, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 21, 1960.
*498 Messrs. Jeffers, Mountain and Franklin, attorneys for plaintiff.
Mr. Harrison F. Durand, attorney for defendants Frederick W. Douglas and Maria D. Meredith, and guardian ad litem of Joseph Douglas Meredith.
Messrs. Bunker, Elliott and Mooney, attorneys for defendants Edward DeHart Krans and Horace E. Bunker, guardian ad litem of Judith W.K. Powell, Charlotte S. Krans, and Barbara D. Krans, defendants.
Messrs. Barrett and Miller, attorneys for John Nichols and the remaining defendants.
*499 STANTON, J.S.C.
No recital of facts will be made at the outset. They will be referred to in the course of the discussion.
For convenience, Honor Barr Douglas will be referred to as the wife, and her trust created by agreement dated July 5, 1935 as the wife's trust; and her husband, John Sheafe Douglas, will be referred to as the husband, and his trust, which is similar to that of his wife and created on the same day, as the husband's trust.
After the wife's death on August 12, 1956, William R. Bailey, one of her three executors and the recipient of a one-sixth interest in her residuary estate, seemingly acting also for the other executors and residuary legatees, wrote to the plaintiff on August 22, 1956 and raised the question as to whether the wife in her will had exercised the power of appointment which she had in her trust. Early in January 1957 the plaintiff took the position that the residuary clause in the wife's will did not constitute an exercise of the power, unless there were extrinsic circumstances of which it was not aware indicating that she intended to exercise it; doubt was indicated as to whether or not New Jersey law governed the determination of the question; that it would file an accounting and ask this court's instruction as to the distribution of her trust estate.
At the oral argument counsel agreed that New Jersey law controls on the question of the exercise of the power of appointment.
It is the settled law of this State that a general residuary clause, in which the testator refers to the property devised or bequeathed as his property, will not be considered to be an exercise of the power of appointment. Farnum v. Pennsylvania Co. for Ins., etc., 87 N.J. Eq. 108 (Ch. 1916), affirmed 87 N.J. Eq. 652 (E. & A. 1916); Lippincott v. Haviland, 93 N.J. Eq. 585 (Ch. 1922). In Bank of New York v. Black, 26 N.J. 276 (1958), decided after the plaintiff took its position on this question, the *500 court stated the above mentioned general rule, and at page 282 Justice Wachenfeld added:
"The testator must in some way express or indicate a conscious intention to execute it. In many instances the intention exists and, although imperfectly expressed, is aided and supported by surrounding circumstances and their reasonable and logical implications, while in other cases the intention is not expressed at all. Our responsibility, within the recognized rules of construction, is to distinguish between the classifications, keeping in mind the basic principle hereinafter alluded to."
In the Black case it was held that the residuary clause did in fact exercise the power of appointment; however, the old general principles were reaffirmed and the case was decided on the particular language of the residuary clause, viewed in the light of the circumstances surrounding the appointee at the time of the execution of her will. Here the wife in her will made no mention of her trust, nor of her right to exercise any power of appointment. There is no expression of intention to exercise any power of appointment. The residuary clause contains only a disposition of her own property in these words: "The rest, residue and remainder of my estate, of every kind, nature and description, real, personal and mixed, and wheresoever the same may be located, I give, devise and bequeath * * *."
There is no need to review all the surrounding circumstances urged by the contending parties. There is nothing really significant advanced on the part of the wife's executors and her testamentary beneficiaries except that her last will and testament, executed on February 20, 1956, was drawn while she was domiciled in California by a California attorney, and that under the law of that state a general residuary clause is held to express a sufficient and valid exercise of the power of appointment. Among the circumstances urged by the husband's kin is the fact that in two earlier wills the wife expressly exercised this power of appointment. The first of these was drawn shortly after the creation of the trust by her New Jersey attorney while *501 she was still resident here. The second will, dated June 19, 1943, was executed while she was domiciled in California and was drawn by a California attorney. In her 1943 will she expressly declared that it was not her intention to exercise the power of appointment given her in the husband's trust. Her action in the two earlier wills with respect to the exercise of the power of appointment not only resists any inference of an intention to exercise the power in her last will but on the contrary indicates an intention not to exercise it. This action and the declaration of her intention in her 1943 will not to exercise the power given in her husband's trust indicate a feeling on her part that her will should speak expressly and explicitly with respect to the exercise or not of a power of appointment which by its terms was to be exercised in her last will and testament.
Reference might be made here to a letter which William R. Bailey wrote to the husband's brother, Fred W. Douglas, on May 24, 1957, wherein he proposed a settlement between what he called the Bailey side and the Douglas side. In it he said the wife did not specifically dispose of the principal of her trust; that Mr. Noon, the California attorney who drew her last will and testament, stated that she never mentioned the trust to him; that her failure to specifically exercise the power of appointment was an oversight and what appears to be a lapse of memory on her part. This lack of consistency speaks for itself.
It is my conclusion that there has been a failure to sustain the burden of proving that there had been an exercise of the power of appointment by the wife.
On October 8, 1957 Mr. Bailey wrote a letter to the plaintiff in which he requested that it, as trustee, pay over to the executors under the wife's will from the corpus of her trust such amount as does not exceed $79,000. As authority for this demand he referred to a sentence in the wife's trust agreement. However, to better understand this the entire paragraph should be set forth, and it is as follows:
*502 "Upon the death of the survivor of the said Honor Barr Douglas and John Sheafe Douglas, her husband, to dispose of the corpus of the Trust Estate as may be provided in the last Will and Testament of such survivor, or failing such provision, to divide one-half of the same among the next-of-kin of the said John Sheafe Douglas and the other half among the next-of-kin of the said Honor Barr Douglas, according to the laws of the State of New Jersey, per stirpes and not per capita. The Trustee is authorized to advance out of the corpus of the Trust Estate any sum which may be requested by the legal representative of the estates of either Honor Barr Douglas or John Sheafe Douglas, or both, for the payment of estate taxes and/or inheritance taxes."
On October 23, 1957 Mr. Bailey, supplementing the above letter, stated that the amount requested by him from the plaintiff would be used for the payment of estate taxes of the wife's estate. He also stated that he was amplifying his request to include the income of the trust from the date of the wife's death.
Upon the advice of its attorneys that the said clause was such that, upon a bona fide request for trust funds to pay estate taxes assessed against the wife's estate, it was obliged to pay over the amount of the request up to and including the whole corpus of the trust estate, the entire trust fund was paid over to the executors early in 1958, namely, $40,000 on January 27, 1958 and the balance of $8,412.85 shortly thereafter.
In the above-quoted clause from the wife's trust agreement, there are several provisions which are effective upon the death of the survivor of the husband and wife. First in order is a direction to dispose of the corpus as provided in the will of the survivor, and next, failing such a provision, is a direction to divide one-half of the corpus among the next of kin of the husband, and the other half among the next of kin of the wife. The foregoing are positive directions; there is no question about their meaning; all is plain and simple. Under one or the other of them the trust assets must of necessity be disposed of. Then follows the sentence quoted by Mr. Bailey in his letter to the plaintiff which is an authorization to advance out of the corpus *503 any sum requested by the legal representatives of the estates of either the wife or the husband, or both, for the payment of estate taxes and/or inheritance taxes.
Much has been said on both sides on this point of advances for taxes that is not material. One thing is certain, however, and it is that a discretionary power was given to the trustee. No direction was given. When a proper request was made it had the right to exercise its discretion, and it is answerable only for the abuse of the discretion. The real difficulty here is with the meaning of the word "advance."
If the trust estate was to be responsible for the payment and satisfaction of such taxes upon request, would not simple and direct language have been used? As an illustration, would there not have been a direction to the trustee to pay instead of advance the tax, or to pay the required sum to the executors for the purpose of paying the tax?
What is meant here by "advance?" The standard dictionaries give many meanings to the word, when used as here, as a transitive verb. The primary one is to move something forward in position, time, or place. When used with respect to money, the ordinary meaning is to pay beforehand; to pay before due; to pay or lend on security of future reimbursement. Webster's New International Dictionary; Funk & Wagnall's New Standard Dictionary; Black's Law Dictionary; Ballentine's Law Dictionary. Cf. Red Oaks, Inc. v. Dorez, Inc., 118 N.J. Eq. 198, 203 (Ch. 1935). However, the word has been construed on occasion to mean to give or to pay. In re Altman's Will, 6 N.Y.S.2d 972 (Sup. Ct. 1938). It may reasonably be said that advancing money has generally been defined to be a payment before its due date. Pargman v. Maguth, 2 N.J. Super. 33, 37 (App. Div. 1949). Commissioner of Internal Revenue v. Dravo, 119 F.2d 97 (3 Cir. 1941).
Federal estate tax returns are required to be filed within 15 months after the date of death, and the taxes are payable within the same time. There is a considerable lapse *504 of time thereafter before the returns are audited. It is only after final audit of an estate tax return that there can be an apportionment of the estate tax. The briefs indicate that the estate tax return in the wife's estate has not been audited. This consideration supports the view that advancing money for the payment of estate taxes means that the money is paid over subject to adjustment after audit and apportionment.
The wife could certainly have provided that the entire trust estate, if necessary, be used to pay estate taxes assessed against her estate. Experience, however, indicates that would be somewhat unusual. In the light of the other language in the paragraph of the trust agreement now being discussed, it would seem that if she intended such a payment, the direction would have been expressed in appropriate language.
The fact that the wife merely authorized rather than directed the advance is not without significance in the present context. The trust agreement extends over eight pages, and it contains mandatory and permissive provisions that admit of no doubt of their meaning. In the paragraph with which we are now concerned we find the phrase "to dispose of the corpus" as provided in the last will and testament of the survivor of the husband and wife, and if there be no such provision, we have the clause "to divide one-half of the same among * * * and the other half * * *."
If the wife had in mind the use of the entire corpus of the trust for a payment as broad as some of the parties here contend for, is it likely that she would have left that to the discretion of her trustee? But aside from this latter consideration, the study of the language of the trust agreement in the light of the surrounding relevant circumstances compels the conclusion that the provision in question merely authorizes the trustee in its discretion, and upon request, to transmit to the wife's executors such sum of money as they might request to be used in the payment of estate *505 taxes and/or inheritance taxes, subject to adjustment when the exact amount of the trust's liability for such taxes has been determined; and that it creates no liability on the part of the trust for the ultimate payment of any estate or inheritance tax, and gives the trustee no power or authority to assume any such liability.
In the letter of Mr. Bailey to Frederick Douglas, dated May 24, 1957, and referred to above, we find this language: "Even more inequitable is the fact that the full value of the Honor Douglas trust must be included in her estate for federal estate tax and California inheritance tax purposes and taxes paid thereon, whether the Bailey next of kin receive all of it, or only half of it, thus further diminishing the estate passing under her will." This is quite inconsistent with the demand in his letter of October 8, 1957 to the plaintiff that the entire corpus of the wife's trust should be paid to him and his co-executors, pursuant to the paragraph of the trust agreement that we are now considering.
The trust agreement does not limit the amount of the advance in terms of dollars, nor with reference to the legal liability of the trust for the payment of part of the estate tax, but by fair implication it is such sum as reasonably approximates the amount ultimately payable. If counsel cannot agree as to such amount, the court will fix it upon the presentation of the judgment. It is a matter of simple arithmetic.
It follows that the trust should be compensated by the executors for the loss of use of that part of the advance that is excessive. If counsel cannot agree as to the rate of interest to be imposed, the court will fix the same upon the presentation of the judgment. This should be calculated with reference to the rate of earnings of the trust over a reasonable period of time immediately prior to the payment by the trustee. There has been no showing that the wife's trust estate lost anything beyond the use of its money.
*506 The executors included the husband's trust in their federal estate tax return as one in which the wife had a power of appointment created on or before October 21, 1942, and stated that she had not exercised it. They justify this action on the basis of an opinion of tax counsel in California that the husband's trust estate should be included in the gross estate of the wife for the purposes of federal estate tax. Such counsel conceded that the law was not entirely clear under the facts presented, but he felt that the exclusion would be contested by the Commissioner of Internal Revenue and that the latter "most probably would prevail." It might be noted here that he advised against the inclusion of the husband's trust in the wife's gross estate for the purposes of the California inheritance tax. No claim has been made by the executors for the refund of part of the estate tax paid, and no decision has been made as yet to do so.
The husband's kin contend that his trust estate is not includible in the wife's gross estate. Whether or not it is properly includible presents a debatable question in a complicated matter of federal taxation which should not be determined in the state courts. The proper forum is in the federal jurisdiction. Hale v. Leeds, 28 N.J. 277 (1958). In a situation such as this a difficulty arises because the executors are the nominal parties dealing with the federal taxing authorities, whereas the husband's kin are the real parties in interest. It might be well to note here a suggested procedure in the Hale case, at page 290. The executors in their brief have indicated their willingness to cooperate in this regard with the husband's kin.
There is no factual basis for a finding at this time that the executors have failed to act diligently and reasonably with regard to this federal tax question. The interested parties should have a reasonable time within which to discuss and plan a course of action for the purpose of having determined in the federal jurisdiction the legality of the inclusion of the husband's trust in the wife's gross *507 estate. In the meantime the plaintiff will be restrained from turning over to the wife's executors any part of the husband's trust for the payment of estate taxes.
If it is determined in the federal jurisdiction that the husband's trust was not properly includible, then the question of the apportionment of federal estate taxes between the wife's estate and the husband's trust becomes academic. However, the question of apportionment of federal estate taxes between the wife's estate and the two trusts has been argued and both sides ask that the entire apportionment question be passed upon at this time. This will be done.
Section 970 of the California Probate Code provides for proration of the federal estate tax upon or with respect to any property required to be included in the gross estate of a decedent, except where a testator otherwise directs in his will, and except in a case where by written instrument executed inter vivos direction is given for apportionment within the fund of taxes assessed upon the specific fund in such instrument. New Jersey has a similar statutory provision. N.J.S. 3A:25-31. The wife's estate is subject to this California statutory provision. She made no such exception in her will or trust agreement. The apportionment directed by the above statutes is really the equitable apportionment which New Jersey enforced prior to the enactment of the above statute in cases where there was a testamentary direction that the entire federal estate tax was not to be borne by the residuary testamentary estate.
The executors contend that the California apportionment statute has no extraterritorial effect with respect to either the husband's trust or the wife's trust because they were created in New Jersey at a time when each was domiciled here. The property of the trusts has always been in the custody of the trustee in New Jersey. Their contention finds support in Isaacson v. Boston Safe Deposit & Trust Co., 325 Mass. 469, 91 N.E.2d 334, 16 A.L.R.2d 1277 (Sup. Jud. Ct. 1950), where it was held that the *508 executor of the estate of a non-resident decedent was not entitled to apportionment against a trust created under and subject to the law of the forum in the absence of a statute permitting it. The husband's kin do not claim extraterritorial effect for the California statute, but they urge that on principles of comity New Jersey should give effect to it. The California statute is not repugnant to the public policy of New Jersey. On the contrary as stated above, there is a similar statute here. New York has applied domiciliary apportionment laws as a matter of comity. Application of Chase National Bank, 55 N.Y.S.2d 470 (Sup. Ct. 1945); In re Dommerich's Estate, 74 N.Y.S.2d 283, (Surr. Ct. 1945); In re Gato's Estate, 276 App. Div. 651, 97 N.Y.S.2d 171 (App. Div. 1950), affirmed 301 N.Y. 653, 93 N.E.2d 924 (Ct. App. 1951); In re Slade's Estate, 4 Misc.2d 616, 158 N.Y.S.2d 719 (Surr. Ct. 1956). See Annotation 16 A.L.R.2d 1282. Recently our Supreme Court has applied foreign statutes in the workmen's compensation area on principles of comity. Stacy v. Greenberg, 9 N.J. 390 (1952); Wilson v. Faull, 27 N.J. 105 (1958). It is therefore concluded that equitable apportionment shall be made as to the wife's trust in accordance with the California statute.
The question remains as to the effect of the March 10, 1944 amendment of the husband's trust agreement by his wife after his death. It is as follows: "I further order and direct that if the assets of the trust estate, or any part thereof, shall be included in my estate for purposes of assessing estate taxes, either federal or state, there shall be paid from the corpus of the trust estate the trust's just share of such estate taxes."
The trust agreement and the amendment afford no basis for determining what is a just share. The present California and New Jersey apportionment statutes provide for an equitable apportionment in the manner of the common-law rule expressed in Morristown Trust Company v. Childs, 128 N.J. Eq. 524 (Ch. 1940). If the purpose of *509 the amendment was to impose a greater charge on the trust than an equitable proration, appropriate language would have been used to spell out how such charge should be computed. It could well be as urged by the husband's kin that this amendment was made merely to insure that the New Jersey trustee would pay to the California executor a proportionate part of the tax regardless of the question of jurisdiction. In any event, an equitable apportionment may be said to be a proper method of determining the just share to be paid from the husband's trust if it is determined that it is properly includible in the wife's estate for the purpose of assessing estate taxes.
Submit judgment accordingly.