Caroline C. DOETSCH, Plaintiff-Appellee,

v.

Lawrence DOETSCH, individually etc., et al., Defendants-Appellants.

No. 13767.

United States Court of Appeals
Seventh Circuit.

Jan. 8, 1963.

Rehearing Denied Feb. 11, 1963.

George R. Lyon, Joseph J. Witry, John M. Duffy, Chicago, Ill., for appellant.

Thomas J. Russell, John L. Malone, Chicago, Ill., Mitchell, Russell & Malone, Chicago, Ill., of counsel, for appellee.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

This diversity action was brought by plaintiff, Caroline Doetsch, as income beneficiary of an inter vivos trust created by her deceased husband, John A. Doetsch, during his life. By her complaint, plaintiff sought to hold the trustee of this trust, defendant Lawrence Doetsch, liable for a breach of his fiduciary duty in failing to pay her income which she alleged was still due her under the terms of the trust. In the alternative, plaintiff sought to hold defendants, Lawrence Doetsch, Eugene Doetsch, A. D. Doetsch and Robert Doetsch, liable for that portion of a federal estate tax deficiency attributable to the inclusion of the corpus of the trust in her deceased husband's estate. The corpus of the

trust had been distributed to defendants as remainder beneficiaries under the trust.

The case was tried to the court without a jury on a stipulation of facts. The district court held that the trustee, Lawrence Doetsch, had not breached his fiduciary duty. Plaintiff did not appeal from this decision and the question is not before us. The district court held defendants liable for the estate tax deficiency attributable to the trust assets received by them and entered judgment against them, from which this appeal is taken.

The trust involved was created September 18, 1949 by plaintiff's deceased husband, John A. Doetsch. The corpus of the trust consisted of John A. Doetsch's one-half interest in Doetsch Brothers, a partnership engaged in the excavating business. Defendant Lawrence Doetsch was named trustee.

By the terms of the trust, income therefrom was to be paid to John A Doetsch for his life. Upon his death, plaintiff was to be paid the income for her life or until she remarried. In no event were the income payments to her to aggregate more than the value of plaintiff's husband's interest in the partnership as of the date of his death.

For purposes of this limitation, the trust provided that on the death of John A. Doetsch the trust assets were to be valued at book value, except for accounts receivable which were to be valued at sixty per cent of book value. Defendants, Lawrence Doetsch, Eugene Doetsch, A. D. Doetsch and Robert Doetsch, were nephews of John A. Doetsch and were the beneficiaries of the principal of the trust.

John A. Doetsch died October 8, 1953 in Tucson, Arizona. Plaintiff is the surviving spouse, executrix and sole legatee under his will, which was duly admitted to probate in the Superior Court of Pima County, Arizona.

After the death of John A. Doetsch, a federal estate tax return was filed by plaintiff as executrix of her husband's estate listing the value of the various properties of decedent, including the value of decedent's interest in the partnership as determined by the trustee in accordance with the trust. No federal estate tax was due according to the estate tax return so filed.

The Internal Revenue Service thereafter assessed an estate tax deficiency against plaintiff as executrix of decedent's estate. Specifically, the Service refused to accept the basis attached by plaintiff to decedent's interest in Doetsch Brothers partnership, holding that the interest had a value of $134,072.39 as of the date of decedent's death, rather than a value of $60,527.97 as shown in the estate tax return filed by plaintiff.

In addition, the Service increased the valuation asserted in the return on certain U. S. Treasury Bonds and on specific bequests made to plaintiff and decreased the amount of the marital deduction claimed by plaintiff as the surviving spouse of decedent. The resulting adjusted gross estate was $180,454.05.

After deducting the $134,072.39 valuation assigned to decedent's interest in Doetsch Brothers partnership, which amount was held to be a terminable interest by the Service, there remained a net estate passing outright to plaintiff, before taxes, of $46,381.66. From this latter figure the Service deducted the deficiency assessment of $18,667.04 and allowed a marital deduction of $27,714.62. Plaintiff accepted this basis of computation by the execution of a waiver.

After defendants had refused to pay the estate tax deficiency, plaintiff filed suit in the United States District Court for the District of Arizona against the United States and defendants herein. In that suit, plaintiff sought an order requiring the Internal Revenue Service to collect the estate tax deficiency out of the principal of the trust. The court subsequently dismissed the action for lack of jurisdiction.

On March 2, 1959, the Internal Revenue Service filed a levy against the trust assets for the payment of the estate tax

deficiency which, together with interest, amounted to $23,573.84.

During the period between October 8, 1953, the date of the death of John A. Doetsch, and March 2, 1959, the date the levy for the estate tax deficiency was filed against the trust assets, Doetsch Brothers partnership earned income in excess of $121,054.84. This amount was sufficient to require Lawrence Doetsch, as trustee, to pay plaintiff the sum of $60,527.94 representing the maximum amount of income due her under the terms of the trust.

Lawrence Doetsch, as trustee, prior to the service of the tax levy, paid plaintiff the sum of $35,556.66, leaving a balance due her under the terms of the trust agreement of $24,971.28. After service of the tax levy, Lawrence Doetsch, as trustee, paid the estate tax deficiency and deducted the amount of that deficiency plus accrued interest from plaintiff's income interest in the trust. This deduction left a balance due plaintiff of $1,396.92, which amount was tendered to plaintiff. Plaintiff refused to accept it. Lawrence Doetsch, as trustee, then distributed the remaining assets held by him under the trust agreement to himself individually and to the other three defendants.

The issue before us is whether the district court was correct in compelling defendants to pay a proportionate share of the estate tax.

It appears that decedent did not indicate either in his will or the trust agreement where the ultimate burden of the federal estate tax should fall or what law should govern this question.

Internal Revenue Code of 1954, § 2002 provides that the estate tax shall be paid by the executor. Section 2205 of the Code provides that if a person other than the executor pays the estate tax "such person shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate * * *."

In Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942), the Supreme Court had occasion to consider the effect of the predecessor to § 2205, which was identically worded. The Court held that a statute of New York providing for apportionment of the estate tax among the distributees or beneficiaries of the estate was not repugnant to the Code section under consideration. The Court decided "Congress intended that state law should determine the ultimate thrust of the tax" and concluded that "if the tax must be collected after distribution, the final impact of the tax shall be the same as though it had first been taken out of the estate before distribution, thus leaving to state law the determination of where that final impact shall be." Id. at 98, 101, 63 S.Ct. at 110, 112.

As noted by the Supreme Court in Del Drago, Congress has seen fit to provide for apportionment in two specific instances. Int.Rev.Code of 1954 §§ 2206, 2207. These two sections authorize the executor to collect a proportionate share of the tax from the beneficiaries of life insurance includible in the gross estate and from the person receiving property as a result of the exercise, nonexercise or release of a power of appointment includible in the gross estate under § 2041 of the Code.

Neither § 2206 nor § 2207 is applicable to the case at bar. Insurance proceeds are not involved here, and we agree with the district court that the trust assets were "included under Section 2036 of the Internal Revenue Code of 1954, relating to the inclusion of property in the gross estate over which the decedent made a transfer during his life and retained an interest for his life or for a period ascertainable by reference to his death."

We conclude, since neither of the apportionment sections in the Code is applicable here, that under the Del Dra-

go case applicable state law is determinative of the issue involved in the instant case.

■ The district court found that John A. Doetsch was domiciled in Arizona at the time of his death, and such finding is not clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. Decedent's will was duly admitted to probate in Arizona, and plaintiff, decedent's widow, is a citizen of that state. The trust involved, however, must be considered an Illinois trust. It appears from the trust agreement that the corpus of the trust was an interest in a partnership doing business in Illinois, the trustee was a resident of Illinois and the settlor, John A. Doetsch, was a resident of Illinois when he established the trust.

■ Under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we are obliged to apply the law of Illinois, including its conflict of laws rules. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The district court was sitting as "only another" Illinois court. Allstate Insurance Company v. Charneski, 7 Cir., 286 F.2d 238, 244 (1960).

The question which we must initially determine is whether Illinois would apply its own law, as the state of the situs of the trust, or that of Arizona, as the state of decedent's domicile, in deciding the ultimate question of whether the federal estate taxes should be apportioned against defendants, the remainder beneficiaries.

The parties have not cited any Illinois case in which this question has been raised, and we have found none. Furthermore, it appears that this precise question has been decided in only five jurisdictions. The Supreme Judicial Court of Massachusetts has held that the question of apportionment is governed by the law of the situs and refused to refer the question to the law of decedent's domicile. Isaacson v. Boston Safe Deposit & Trust Co., 325 Mass. 469, 91 N.E. 2d 334, 16 A.L.R.2d 1277 (1950). In Isaacson, the court emphasized that "[t]he trust is from every point of view a Massachusetts trust" and stated that "[t]he only possible connection between this trust and the State of Maine [decedent's domicile] which we are able to discover is that the Federal government in imposing an estate tax has seen fit to aggregate the probate estate in Maine and the trust fund in Massachusetts into a single 'gross estate.'" Id. at 336.

In First National Bank of Miami v. First Trust Co. of St. Paul, 242 Minn. 226, 64 N.W.2d 524 (1954), the Supreme Court of Minnesota adopted the reasoning of the Isaacson case and held accordingly. In Knowles v. National Bank of Detroit, 345 Mich. 671, 76 N.W.2d 813 (1956), the court refused to follow a decree of a Florida court, a court of the state of decedent's domicile, ordering apportionment with respect to Michigan trust assets. The court stated: "[T]he order of the Florida court, based on a proration statute in that State, does not control decision here, absent such a statute in this State." Id. at 816. The decision is not so clear as Isaacson and First National Bank of Miami because the court relied on what it discerned to be the testatrix's intent in refusing apportionment.

■ The courts of New York and New Jersey, however, have adopted a rule which refers the question of apportionment of estate taxes to the law of decedent's domicile. In re Gato's Estate, 276 App.Div. 651, 97 N.Y.S.2d 171 (1950), aff'd 301 N.Y. 653, 93 N.E.2d 924; Central Hanover Bank & Trust Co. v. Peabody, 190 Misc. 66, 68 N.Y.S.2d 256 (1947); Trust Co. of Morris County v. Nichols, 62 N.J.Super. 495, 163 A. 2d 205 (1960). In each of the two New York cases, the application of the domiciliary law led to apportionment of the taxes, but New York follows the same conflicts rule where the domiciliary law fails to require apportionment. In re Peabody's Estate, 115 N.Y.S.2d 337 (Sup.Ct.1952).

In our opinion the better rule, and the one which the courts of Illinois would follow, is that adopted in New York and New Jersey. When questions of apportionment of estate taxes arise in courts of a state of the situs of a trust whose assets are includible in decedent's gross estate for tax purposes, the law of the situs refers to the law of decedent's domicile to resolve the questions.

This rule brings about the desirable result of uniform treatment of all those who benefit from the property included in decedent's gross estate for tax purposes, for regardless of the situs of the property there is a single point of reference—decedent's domicile.[1]

The decedent's domicile is a traditional point of reference in the solution of many problems involving decedent's estates. Problems concerning movables transferred upon death which involve questions such as intestate distribution and validity of a will are traditionally referred to the domiciliary law.[2] In addition, a non-domiciliary forum state whose local law governs control of land titles may look to the domiciliary law to aid in interpreting the testator's intent.[3] The problems of apportionment are closely akin to these problems of decedent's estates, for they are all concerned with the extent to which various persons are to share in the decedent's wealth. The domicile provides an easy and convenient point of reference for the solution of these problems.

Finally, referring to the law of decedent's domicile results in observing that state's policy with respect to protecting the widow and family. The extent of a decedent's inter vivos transfers brought into the gross estate could be such that the entire probate estate would be used up in payment of federal estate taxes.[4] Recognizing this possibility a state may have adopted a policy of apportionment. Thus, some assets are left for the estate beneficiaries as well as the trust beneficiaries. Protection of the widow and family is a matter in which the domiciliary state has a dominant interest, and without reference by the situs state to the state of decedent's domicile, this policy can not be fulfilled.[5]

Having decided to look to the law of the state of decedent's domicile, Arizona, we find there is neither a statute commanding or precluding apportionment nor a judicial pronouncement on the subject.

The parties in the instant case have devoted much effort to cataloguing the cases pro and con from various jurisdic-

---

1. The inconsistency which could result under the rule adopted by Massachusetts, Minnesota and Michigan may be demonstrated. A decedent has died domiciled in state A. Before his death, he has established trusts in states B and C the value of which have been included in his gross estate. Local law in state B, the situs of one of the trusts, requires apportionment while local law in state C, the situs of the other trust, does not so require. Neither states B nor C look to the law of decedent's domicile but apply their local law in determining the question of apportionment. Those who benefit under the trust in state B must contribute to the estate tax burden, but those who benefit under the trust in state C do not. This anomalous situation is undesirable and is avoided when each situs state refers to the law of decedent's domicile to resolve the question.

2. Restatement, Conflict of Laws §§ 303, 306 (1934).

3. Zombro v. Moffett, 329 Mo. 137, 44 S.W. 2d 149 (1931); Restatement, Conflict of Laws § 251 (1934).

4. See In re Gato's Estate, 276 App.Div. 651, 97 N.Y.S.2d 171 (1950), aff'd 301 N.Y. 653, 93 N.E.2d 924 where the net estate distributable by the administrator amounted to $180,571 while the total estate tax, because of inter vivos transfers brought into the gross estate, amounted to $190,532.

5. For a through treatment of the conflict of laws problems involved in cases such as the case at bar see Scoles, Apportionment of Federal Estate Taxes and Conflict of Laws, 55 Colum.L.Rev. 261 (1955).

tions on the issue of apportionment.[6] We do not feel compelled to do so. In our opinion, Arizona would adopt the rule of apportionment.

In passing on this question, the Supreme Court of New Mexico stated in In re Gallagher's Will, 57 N.M. 112, 255 P. 2d 317, 37 A.L.R.2d 149 (1953):

"We have not tallied the jurisdictions on each side, but although the earlier rule may still represent the majority opinion of jurisdictions passing upon the question, we feel no compunction to adhere inelastically to a rule which in the view of this court is not productive of substantial justice. Certainly the vitality of our legal system derives in large part from the function of our courts in applying its *root* concepts, among them that of equal treatment, to ever new and diversified problems. * * * Therefore, the rule is nonprobate assets includible in the gross taxable estate shall bear their proportionate share of the burden of the federal estate tax * * *." Id. at 328.

■ We feel this statement adequately expresses our reasons for holding that Arizona would apportion the tax burden under the circumstances of the instant case.

■ Defendants assert plaintiff is estopped from claiming contribution because she signed a waiver entitled "Waiver of Restrictions on Assessment and Collection of Deficiency and Acceptance of Overassessment." We do not agree. Signing the waiver did not preclude a subsequent suit for refund. All that plaintiff waived was the procedure involved in making a deficiency assessment under Int.Rev.Code of 1954 §§ 6212 (a), 6213(a) and the right to appeal such deficiency to the Tax Court. See Payson v. Commissioner of Internal Revenue, 2 Cir., 166 F.2d 1008 (1948). The waiver did not estop plaintiff from a later attack on the manner in which the estate

tax was determined, and it can not operate to estop plaintiff in the instant action.

■ The district court held that plaintiff should recover from defendants "such portion of the total tax, including interest, borne by her as the value of the trust assets included in the gross estate of the decedent and received by each of the defendants, bears to the sum of the taxable estate, and the amount of the exemption allowed in computing the taxable estate, as determined under Section 2052 or Section 2106(a) of the Internal Revenue Code of 1954."

In calculating the amount for which defendants were liable under this formula, the district court concluded that the "value of the trust assets included in the gross estate of the decedent and received by each of the defendants" was $134,072.39. There is no merit in defendants' contention that the income interest received by plaintiff should be deducted from this figure. See In re Setrakian's Estate, 169 Cal.App.2d 795, 338 P.2d 247 (1959).

The district court in the instant case correctly stated:

"The plaintiff, according to the Trust Agreement was only to receive the income earned on the trust assets and not the trust assets themselves. In other words, all of the trust assets were to go to the defendants and only the income earned on the assets was to be distributed to the plaintiff. According to the stipulation of facts submitted by the parties, the trust earned a sufficient amount to pay the plaintiff her maximum income share of the profits. Therefore, it necessarily follows that the defendants received the total value of the trust estate included in the gross estate of the decedent of $134,072.39."

Defendants contend the amount of plaintiff's marital deduction should not have been excluded from the formula

6. See Annot. 37 A.L.R.2d 169 (1954); 142 A.L.R. 1135 (1943).

used in determining defendants' share of the tax. The amount of the marital deduction, however, did not contribute to the tax burden, and was properly excluded by the district court in arriving at its apportionment formula. Seymour National Bank v. Heideman, 178 N.E.2d 771 (Ind.App.1961).

For the foregoing reasons, the judgment of the district court is affirmed.

Affirmed.