**HEPBURN et al. v. WINTHROP et al.**
**No. 6528.**

United States Court of Appeals for the District of Columbia.

Argued Feb. 4, 1936.

Decided March 16, 1936.

Swagar Sherley, F. DeC. Faust, and Francis L. Neubeck, all of Washington, D. C., for appellants.

Edward Stafford, Arthur Hellen, Charles H. Bradley, Morgan H. Beach, and John S. Flannery, all of Washington, D. C., for appellees.

Before MARTIN, C. J., and ROBB, GRONER, and STEPHENS, JJ.

GRONER, Associate Justice.

The appeal involves the interpretation of the will of Levi P. Morton, formerly Governor of New York and Vice President of the United States. Two questions are involved:

First, to what portion of the property held in trust for the benefit of Mary Morton, a daughter of Governor Morton, did the power of appointment conferred upon her by the will extend?

Second, should the federal estate tax paid by the executors of Governor Morton be apportioned between the realty and the personalty?

The will of Governor Morton was executed June 29, 1910, while he was a resident of the state of New York. Subsequently he became a resident of the District of Columbia and executed three codicils to his will; the second codicil, hereinafter set out in full, being executed on June 14, 1911. He died a resident of the District of Columbia on May 16, 1920.

At the time of making his will, his family consisted of his wife, Anna, and four daughters, Edith Eustis, Alice Rutherfurd, Helen Morton, and Mary Morton. Alice Rutherfurd died June 19, 1917, leaving surviving her six children, one of whom died without issue in the lifetime of Governor Morton. Mrs. Morton died August 14, 1918, so that upon Governor Morton's death there were surviving him three daughters, Mrs. Eustis, Helen Morton, and Mary Morton, and five children of his deceased daughter, Alice Rutherfurd. The gross estate consisted of personalty of a value of $8,000,000 and of realty, chiefly in New York, of a value of something under $3,000,000. All administration and other expenses incurred by the executors, and the federal estate tax of $1,736,886.47, were by them paid out of the personalty.

In 1922 the executors filed a bill in the Supreme Court of the District of Columbia for a construction of certain parts of the will and codicils. One of the questions submitted to the court was whether the portion of the residuary estate going to the Rutherfurd heirs should be paid over by the executors to the trustees and by them paid over to the guardian of the heirs, or whether it should be paid directly by the executors to the guardian of the heirs. Judge Hitz, then sitting in the Supreme Court of the District, decreed that the residuary estate be divided into four shares, and that one of the shares should be delivered to the trustees of Governor Morton's estate for the Rutherfurd children.

The question involved here, namely, whether the four shares into which the residuary estate was directed to be divided were "original shares," or original shares plus accretions, was not raised or passed upon at that time. The executors then turned over to the trustees all of the residuary estate in their hands, and the trustees divided it into four equal shares and set up four separate trusts bearing the names of the three daughters, Edith Eustis, Helen Morton, and Mary Morton, and delivered the fourth share, designated "the Alice Rutherfurd share" to the guardian of Mrs. Rutherfurd's children.

Mary Morton died on April 20, 1932, unmarried, but leaving two adopted minor children, Lewis Peter Morton and Miriam Morton, aged 9 and 3 years, respectively. She left a will disposing of her own estate, and by item 8 thereof exercised in part the power of appointment given her under her father's will for the benefit of her two adopted children.

Thereafter this suit was brought in part to determine whether the several trusts established by Governor Morton's will constituted the whole original shares of the daughters or whether four-fifths of each trust should be considered the original share and one-fifth of each trust considered an accretion arising from the distribution of the share that Governor Morton's widow would have taken for life had she survived her husband.

The first four paragraphs of Governor Morton's will concern bequests to his wife and to others, and have no relation to the question under consideration. The fifth, or residuary clause, and the second codicil are set out in full as follows:

"Fifth. All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever sort or kind the same may be and wheresoever the same may be situated, of which at the time of my decease I may be seized or possessed, or in or to which I may then have any right, title, estate or interest, I give, devise and bequeath to my said executor and trustee hereinbefore named; to have and to hold the same in trust, nevertheless, and for and upon the several uses and purposes hereinafter declared. To enter upon and take possession of the same, and to divide the same into as many equal parts or shares as will be equal in number to my wife and children whom I may leave me surviving, and children of mine deceased at the time of my death who shall have left lawful issue me surviving and to designate one of the said parts or shares by the name of my wife, and one other of said parts or shares

by the name of each of my said children then surviving, and one other of said parts or shares by the name of each child of mine then deceased leaving issue then surviving, and to have and to hold that one of the said equal parts or shares that is designated by the name of my wife during the lifetime of my wife, and to receive the rents, income and profits thereof, and to pay and apply the net rents, income and profits of the same to the sole and separate use of my wife for and during her life, and upon her death to divide and distribute the capital of said part or share in equal proportions, but *per stirpes* and not *per capita,* among my children then surviving and the lawful issue her surviving of any of my children who may then be deceased leaving such issue then surviving, such issue taking collectively the same share as a surviving child, the portion so coming to my children then surviving to be added to and form part of the shares designated by the names of said children respectively under the foregoing provisions of this my will, and to be held by my said trustee as part of said several shares during the lifetime of said children respectively, and upon their deaths respectively divided among their issue, or in default of issue among my surviving children and the lawful issue of deceased children as hereinafter provided in respect to the shares set aside for them respectively, the portion of the said share designated by the name of my said wife which would go to the descendants of any child of mine who may have died before or after my death leaving issue her surviving, to be transferred, conveyed and paid in equal shares to such issue respectively, *per stirpes* and not *per capita;* and to have and to hold the other said equal parts or shares respectively which are designated by the name of my said children whom I may leave me surviving each during the lifetime of the child whose name it bears, and to receive the rents, income and profits thereof, and to apply the net rents, income and profits of said equal parts or shares respectively to the sole and separate use of the respective child whose name it bears, for and during the lifetime of said child, and thereafter during the lifetime of my said wife if she shall survive said child to hold in trust two-thirds of said share and subject to the payment of a proportionate part of the payments to and for my wife hereinafter provided for to apply the net income thereof to the use of the lawful issue of such child, if any, in equal portions, *per stirpes* and not *per capita,* and upon the death of any such child or upon the death of my said wife, if she shall survive such child, to convey, transfer and pay over such equal part or share theretofore held in trust for such child, or said two-thirds thereof, as the case may be, in equal portions to and among the lawful issue of said child then living *per stirpes* and not *per capita,* and in default of such issue then living, then upon the death of such child or upon the death of my said wife, if she shall survive such child, to pay over, transfer and convey the said equal part or share or said two-thirds thereof in equal portions to and among my children then surviving, and the lawful issue of deceased children who may have died leaving such issue then surviving per stirpes and not per capita, to have and to hold the same to my said children or their issue, as the case may be, their heirs and assigns forever, provided, however, that I authorize either of my said children who shall survive me, by her last will and testament to direct and appoint that the remaining one-third part of the share of such child in my residuary estate or any part of said third shall remain in trust in the hands of my executor during the life or until the remarriage of any husband who may survive such child as her husband, and that the net income thereof shall be paid or applied to the use of such husband during the residue of his life or until his remarriage, and subject to such provision, if any, for her said husband, and subject to two-thirds of said share being held in trust as aforesaid during my wife's life, I authorize each of my said children who may survive me by her last will and testament to give, dispose of and distribute one-half of her share of said residue, of which half the amount, if any, so disposed of for the benefit of her husband shall be deemed a part, to and among such person or persons, including such husband, and in such proportions as she shall by her said last will and testament designate and appoint, but the power hereby given and created shall extend only to such child's original share in my residuary estate and not to any addition to or accretion thereof from the distribution of any other share in my residuary estate. * * *"

Second Codicil:

"I, Levi Parsons Morton, of the city of Washington, in the District of Columbia, make, publish and declare this to be a Codi-

cil to my last Will and Testament, made and executed on the Twenty-ninth day of June, in the year Nineteen hundred and ten.

"First. I hereby modify the provisions of my said will in respect to the disposition of my residuary estate as follows: Whenever and as often as under the provisions of my will, any portion of the share of the residuary estate set aside for either of my daughters, not disposed of by her under the power given to her in that behalf, would vest absolutely in another of my daughters, I direct that, so far as such portion consists of personal property or of real estate in the District of Columbia, it be held in trust by my trustee during the life of such other daughter, and that the net income thereof be applied to her use, with the same powers and duties on the part of said trustee and the co-trustees in respect thereto as in respect to the share of my residuary estate given for her benefit by my said will, and that upon her death the same be equally divided, *per stirpes,* and not *per capita* among her issue then surviving, and in default of issue then surviving among my other daughters then surviving and the issue then surviving of any deceased daughters, subject however as to surviving daughters to the provisions of this Codicil in respect to its being held in trust during their lives, with like remainder over upon their deaths.

"My purpose in making this change is to carry out more effectually than I could do as a citizen of New York, my general purpose to keep my estate in my own family so far as I may do so lawfully and consistently with the power which I have given my daughters to dispose by will subject to the approval of the co-trustees named in or appointed conformably to my will, of one-half of their original shares in my residuary estate. * * *"

The lower court was of opinion that, under the provisions of the portion of the will we have quoted, the power of appointment given by Governor Morton to each of his surviving daughters extended only to one-half of one-fifth of his residuary estate. The court was also of opinion that the amount of the federal estate tax paid by the executors was a proper charge, as to the whole amount against the personalty and not chargeable at all against the real estate.

The will was drawn by Judge William G. Choate, an eminent member of the New York bar.

For the sake of clarity, we restate the first question. It is: To what portion of the property held in trust for the benefit of the late Mary Morton did the power of appointment conferred upon her by the will extend?

It is contended by appellants that, Mrs. Morton having predeceased Governor Morton, all provisions in the will looking to a share for life in his wife became nugatory, and that his residuary estate was required to be divided into four original shares, one of which came to Mary Morton for life, with power of appointment as to one-half of such share; that Governor Morton's gift to his "wife and children whom I may leave me surviving" was a gift to a class, of which the wife was a member, and that those of the class surviving the testator took, subject to the terms of the will, the entire estate; and that, even though it should be held that the surviving children took as accelerated remaindermen their proportionate part of what would have been the wife's share had she survived, they would take in that case as of the death of the testator, and such portion would come with the other interest as an original share and not as an addition to, or accretion from, the distribution of any other share.

The contention of the appellees, on the contrary, is that the power of appointment given to Mary Morton by the will extended to one-half of one-fifth of the residuary estate, and not to one-half of one-fourth. They insist that the will shows the testator intended that a share should be designated in the name of his wife whether she survived him or not, and that the part of it which passed in trust to Mary Morton was in addition to her "regular" share, and as to it she was denied power of appointment by the will.

There is, of course, no question that, if Mrs. Morton had survived Governor Morton, his residuary estate would have been divided into five equal shares, and, to clearly understand the exact question we have to decide, it is proper to point to the clause of the will which gave to each of the daughters, who should survive the testator, power to appoint one-half of her share, but which also stipulated that the power should "extend only to such child's original share * * * and not to any addition to or accretion thereof from the distribution of any other share in my residuary estate". The question is narrow and, as we think, turns upon whether the residuary clause should

be construed as creating a gift to a class of which the wife was a member, or as creating a gift to the wife separately and to the daughters and grandchildren as a class. The language is:

"To divide the same into as many equal parts or shares as will be equal in number to my wife and children whom I may leave me surviving, and children of mine deceased at the time of my death who shall have left lawful issue me surviving and to designate one of the said parts or shares by the name of my wife, and one other of said parts or shares by the name of each of my said children then surviving, and one other of said parts or shares by the name of each child of mine then deceased leaving issue then surviving."

 The definition usually found in the decided cases of a class gift is: A gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or some other definite proportions; the share of each being dependent for its ultimate amount upon the ultimate number. 28 R.C.L., § 233. And it is likewise the general rule that the time for fixing the membership in a class taking under a will is the death of the testator. Until that event, unless the will itself manifests a different intention, neither legatee nor devisee has any interest in the gift; and the entire interest vests in such persons only as fall within the class at the date of testator's death. This is the rule in Maryland and Virginia, from which states the District of Columbia gets its common law, and is also the rule in New York where the will was executed. Loockerman v. McBlair, 6 Gill (Md.) 177, 46 Am.Dec. 664, and attached note; Driskill v. Carwile, 145 Va. 116, 133 S.E. 773; In re Fordham's Will, 235 N.Y. 384, 139 N.E. 548.

As we have seen, Governor Morton provided for the division of his residuary estate into "as many equal parts or shares as will be equal in number to my wife and children whom I may leave me surviving." This language is plain and convincing. The words "whom I may leave me surviving" necessarily apply to the wife equally with the children and we think clearly show that Governor Morton purposely left the actual number of shares indefinite until the date of his death.

Nor, in our opinion, is there anything in the succeeding clause of the will, "and to designate one of the said parts or shares by the name of my wife, and one other of said parts or shares by the name of each of my said children then surviving, and one other of said parts or shares by the name of each child of mine then deceased leaving issue then surviving," which affects this conclusion. The words in the preceding clause created a class gift. The testator knew that the class was subject to diminution by reason of future deaths and that the property would vest only in such persons as survived him. The clause last quoted was written with knowledge of this fact, and obviously was intended to apply—as was true of many other provisions for her—only in the contingency that his wife should actually survive him. The words "wife" and "children" and "grandchildren" were therefore words merely of description.

Taking the will as a whole, we think it clearly shows a purpose to effect an equal division of the residuary estate among the members of testator's family who should survive him. For this purpose he provided that his residuary estate should go to a class, of which his wife and his daughters, living at the time of his death, should be members. The will itself speaks of the property devised and bequeathed as the property which testator owned "at the time of my decease," and the words "such child's original share" undoubtedly were intended to describe the share which the child took upon the death of testator, and, in the circumstances as they actually occurred, to distinguish this original share from any additional share which a child might thereafter become entitled to upon the death of a sister without issue.

In this view, the clause, "shares as will be equal in number to my wife and children whom I may leave me surviving," must by every fair construction of the language—technical or literal—be read as including both wife and children, and, when so read, the clause falls within the limits of the rule of a class gift; for, as we have seen, it is a gift to an aggregate number, all of whom must be living at the death of the testator, the number of whom is necessarily uncertain until the death of the testator, and the amount of the share of each dependent on the number who take. No distinction is made in the will between the share of the mother and the daughters, except that authority is given to the daughters to dispose of a half of their "original shares" by appointment. Otherwise the enjoyment and the ultimate disposition of the

property is the same. But the acquisition in the first instance, in either case, was dependent upon survivorship at the time of the death of the testator; and accretions to an original share depended, in the circumstances, upon survivorship later as between the daughters; all of the property finally going to the Eustis and Rutherfurd children (the grandchildren of the testator), except only as to that part of the New York realty which passed to the surviving daughter or daughters upon the termination of the life estates of the other daughters predeceasing her or them, or that passed by the exercise of the power of appointment given in the will. That this is precisely the result Governor Morton sought to attain is abundantly apparent from the will as a whole.

We therefore think it perfectly clear that the wife's share, she having predeceased her husband, disappeared and became a part of the original shares into which the estate was divided on the death of the testator.

It has been aptly said that no will has a twin brother, but a case in which the ultimate facts are strikingly like those we have here is M'Kay v. M'Kay (1900) 1 Irish Rep.(Ch.Div.) 213. In that case the testator directed that certain personal property be sold at auction within six months from his decease and, after directing certain payments from the proceeds, provided that the residue should be divided equally between "my said wife and all my children then living, share and share alike." The court said:

"The second question is, whether the share of the testator's wife, who predeceased him, of the surplus proceeds of the money produced by the sale so directed, survived to the testator's children living at the time of the sale, or fell into the general residue of his personal estate. This depends on the question whether the gift of this surplus was to his wife and children as tenants in common, or, as a class. If the former, the wife's share fell into the general residue, and was undisposed of save by the general residuary gift. If the latter, it survived to the other members of the class. This was, in my opinion, a gift to a class which consisted of his wife and children living at the time of distribution. The money arising from the sale was to be equally divided between all these legatees, including the wife, in equal shares. The amounts of these shares could not be ascertained until the period of distribution. The legal definition of a gift to a class depends on the mode of the gift, which must be a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in certain proportions, the share of each being dependent upon the ultimate number of persons. Now, here the gift was to an aggregate number of persons, namely, the wife and children of the testator living at the period of distribution, the number of whom was necessarily uncertain at the time of the gift, and was to be ascertained at the future period of distribution, and such persons were to take in certain proportions, the share of each, including the wife, being dependent on the number of persons to take at the period of distribution. * * *"

It was accordingly held that the wife's share did not pass to the general residuary legatees as being undisposed of, but was divisible between the children of the testator in equal shares.

Second. By reference to the second codicil, it will be seen that some of the persons entitled to the personal estate are not also those who ultimately receive the New York real estate. Because of this fact the trustees asked the court to instruct them whether the federal estate tax paid by the executors should now be apportioned between the real estate and the personal property.

Under the will, the real estate passed to trustees, the personal estate to the executors, but both passed ultimately to the beneficiaries under the residuary clause.

The tax was assessed under the Revenue Act of 1918 (40 Stat. 1057, § 401). The act (sections 404, 407, 409) requires the executor to make the return and to pay the tax and until paid, and for ten years, the tax is a lien upon the gross estate of the decedent. The statute does not tax the property, but the privilege of transfer. "What was being imposed here was an excise upon the transfer of an estate upon death of the owner. It was not a tax upon succession and receipt of benefits under the law or the will. It was death duties, as distinguished from a legacy or succession tax. What this law taxes is not the interest to which the legatees and devisees succeeded on death, but the interest which ceased by reason of the death." Young Men's Christian Ass'n v. Davis, 264 U.S. 47–50, 44 S.Ct. 291, 292, 68 L.Ed. 558.

The statute gives the testator the right by will to direct what property or class of property shall assume the burden of the tax. In the present case, admittedly, there was no declaration by the testator on this subject. A number of cases have arisen in which the question has been whether the tax should be charged against the residue of the estate or apportioned pro rata among specific devisees and legatees; and, so far as we know, all the cases hold that, failing some provision in the will declaring otherwise, the tax is payable out of that portion of the residue to which the executor takes title. Some of the cases are New York T. Co. v. Eisner (D.C.) 263 F. 620, affirmed 256 U.S. 345, 41 S.Ct. 506, 65 L.Ed. 963, 16 A.L.R. 660; Corbin v. Townshend, 92 Conn. 501, 103 A. 647; In re Hamlin, 226 N.Y. 407, 124 N.E. 4, 7 A.L.R. 701; Schuette v. Bowers (C.C.A.) 40 F.(2d) 208.

■■ Section 407 of the act declares that the tax is to be paid by the executor before distribution. This implies that the tax is of the nature of an administration expense. It is to be paid in money out of any available funds, or, if there be none, by converting property into money for the purpose. United States v. Woodward, 256 U. S. 632, 41 S.Ct. 615, 65 L.Ed. 1131. It is taken from the estate before the property is set off to the beneficiaries. It is therefore not a payment as to which the beneficiaries have any concern. It is not a charge against either legatees or distributees. But appellants say that, if not payable by legatees or distributees, it is payable out of the residue; and here, they say, the residue consists of both real and personal property, and that each should bear its share of the burden. There is a reasonableness to this which Congress might very well have considered, but we think the answer is that Congress left the question open to action either by the testator in the will or by the states through statute. And since, as we have seen, there is no direction in the will and so also no statute dealing with the subject, this brings us back to the federal statute and the necessary implications from its terms.

In Hampton's Adm'r v. Hampton, 188 Ky. 199, 221 S.W. 496, 10 A.L.R. 515, the Court of Appeals of Kentucky had this case: The decedent died intestate, and it became necessary, in determining the share of the personalty which under the state statute would go to the wife, to determine whether the federal estate tax should be paid out of the personalty or apportioned between the personalty and the realty. The amount of the personalty was comparatively small, and the estate tax would have consumed two-thirds of it if that fund only was chargeable with the payment of the tax. The real property, on the other hand, represented 90 per cent. of the whole estate, and the fairness of imposing on it a part of the tax is manifest. The court accordingly held that every portion of the estate should bear its proportionate part of the tax. The same rule was followed in the later case of Bingham's Adm'r v. Commonwealth, 196 Ky. 318, 244 S.W. 781.

In the instant case there is no real question of an equitable apportionment between the several interests as to their original shares. All the daughters took alike. But, even if this were otherwise, the result would be the same; for, as the Supreme Court said in the Eisner Case, supra, 256 U.S. 345, at page 349, 41 S.Ct. 506, 507, 65 L.Ed. 963, 16 A.L.R. 660: "As to the inequalities in case of a will they must be taken to be contemplated by the testator. He knows the law and the consequences of the disposition that he makes. As to intestate successors the tax is not imposed upon them but precedes them and the fact that they may receive less or different sums because of the statute does not concern the United States."

A different view from that taken by the Kentucky court was announced in Turner v. Cole, 118 N.J.Eq. 497, 179 A. 113, 115. There the estate was divided between two families—one took the personal estate; the other the real estate—and the question was whether the federal estate tax should be payable out of the personalty or out of the personalty and the realty. It was held that it was payable out of the personal estate alone. The court, after pointing out that the tax is not a property tax nor an inheritance tax, but a tax imposed upon the transfer of the net estate, said that, like death duties, it is payable out of the general residue of the estate, and that the real estate devised or descending is not liable to contribution. The tax, the court said, "is imposed upon the transfer of the 'net estate.' * * * It is required to be paid, one year after the death of the deceased, by the executor or administrator. * * * The statute contains no direction for the apportionment of the duty among the legatees, devisees, or distributees; rather the contrary. The tax is to be paid out of the

residuum before distribution. * * * The design of the Congress was clearly to levy a duty 'on the estate and not on the particular devises, legacies or distributive shares.' Plunkett v. Old Colony Trust Co., 233 Mass. 471, 124 N.E. 265, 266, 7 A.L.R. 696. See, also, In re Hamlin, 226 N.Y. 407, 124 N.E. 4, 7 A.L.R. 701.

"And it is the general rule that, in default of testamentary provision to the contrary, 'debts, charges and all just obligations upon an estate' must be paid out of the residue. The benefaction conferred by the residuary clause of a will is only of that which remains after all paramount claims upon the estate of the testator are satisfied.' Plunkett v. Old Colony Trust Co., supra. * * * The tax is a pecuniary burden or imposition laid upon the estate. State of New Jersey v. Anderson, 203 U.S. 483, 492, 27 S.Ct. 137, 140, 51 L. Ed. 284; Plunkett v. Old Colony Trust Co., supra. Such a death duty is not a debt. Debts are obligations for the payment of money founded upon a contract, express or implied. Taxes are imposts levied for the support of the government, or for some special purpose authorized by law. Meriwether v. Garrett, 102 U.S. 472, 513, 26 L. Ed. 197. But, while not technically describable as a debt, it is akin to such an obligation in respect of the ascertainment of the quantum of the residuum for distribution, both in cases of testacy and intestacy. The residuary estate, as noted, is that which remains after all paramount claims upon the estate have been provided for. * * *

"It is evident, therefore, that the tax at issue is an 'estate tax,' as distinguished from an inheritance tax, and is payable by the estate before distribution, and not by the distributees or beneficiaries. It follows that the burden of the tax falls upon the personal estate."

 There can be no doubt that the tax is not a tax upon the property itself, but a tax upon its transmission. Until it is paid, the right to distribution or division is suspended, as is also the right to the property of the estate. In this case, as we have seen, the executors took title only to the personal estate, and, under the provisions of the statute, they were required to and did pay the tax; and we can find nothing in the statute giving them a right to partial reimbursement out of the real estate which passed immediately to the trustees. All that the executors are required to do for a discharge of their responsibilities is to turn over to the trustees the residue of the estate in their possession after complete administration. And there could be no complete administration until the estate tax was paid. Hence, as we think, in the absence of anything in the statute creating the exception urged here and in the absence of any provision in the will directing a contribution from the real estate and in the absence of a local statute on the subject, it is clear that the payment of the tax out of the personal residuary estate was, like the payment of debts, an expense of administration; and, as to it, the decision of the lower court should be affirmed.

Affirmed in part, reversed in part, and remanded, with instructions to proceed in accordance with this opinion; costs in all courts on the trustees of the estate of Levi P. Morton.