**DOROTHY K. WINSTON & CO. et al.,**
**Plaintiffs,**

v.

**TOWN HEIGHTS DEVELOPMENT,**
**INC., Defendant.**

**Civ. A. No. 2200–72.**

United States District Court,
District of Columbia.

April 5, 1974.

Edward H. Kerman, Washington, D. C., for plaintiffs.

Isaac N. Groner, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

JUNE L. GREEN, District Judge.

This case is presently before the Court on defendant's motion to dismiss or in the alternative for summary judgment and a motion to preclude reliance on the activities of Lester Goldberg, Esq. Plaintiffs have responded in objection to all three of these motions.

The amended complaint filed herein alleges jurisdiction in this Court pursuant to 28 U.S.C. § 1332, Title 11 § 501(4) of the D.C.Code, and Title 13 § 423 of the D.C.Code.

The defendant disputes jurisdiction in this Court under 13 D.C.Code § 423 which is the District's "long-arm" statute. This dispute is the basis of its motion to dismiss. Not only is jurisdiction in issue, but virtually every other material issue is being hotly contested by both parties. With the case in this posture, it would be a fruitless exercise to attempt a complete statement of the facts. The shell of plaintiffs' complaint is as follows: Plaintiffs allege that one Lester Goldberg approached Dorothy K. Winston & Co., real estate brokers, as an agent for the defendant, Town Heights Development, Inc. Goldberg offered a contractual agreement between Winston and Town Heights requiring Winston to employ their best efforts to secure either an investor or purchaser for real estate in Florida. Plaintiffs allege that the eventual purchaser was an individual procured by plaintiffs and so registered, thus entitling them to a commission. This commission was never paid.

### I.

The defendant denies that the D.C. "long-arm" statute (Title 13 § 423 of the D.C.Code) has been properly invoked by plaintiffs' amended complaint. As previously outlined, plaintiffs allege that Lester Goldberg entered plaintiffs' D.C. office and offered a real estate brokerage contract concerning a Florida corporation and Florida land. Plaintiffs al-

legedly accepted such employment, then telephoned defendant's vice-president, Mr. Jack Blatt, in Florida, for more details concerning the land. Mr. Blatt allegedly confirmed this contractual agreement and provided the requested details.

Defendant contends (1) that Lester Goldberg had no real or apparent authority to act in defendant's behalf and (2) that a phone conversation occurs in the state where the words are spoken; thus whatever occurs outside of the District of Columbia cannot be relied on to confer jurisdiction upon a court within the District of Columbia. Margoles v. Johns, 157 U.S.App.D.C. 209, 483 F.2d 1212, 1218 (1973).

■ The Court finds a fatal error in both of defendant's jurisdictional arguments. Conceding for the moment that agency must be established before the acts of the agent may be used against the principal, even for the purposes of establishing jurisdiction, plaintiffs have also alleged that the phone conversation with Jack Blatt ratified the contract with plaintiffs as defendant's non-exclusive real estate broker. It is also well established that an act of ratification by the principal removes any agency disabilities and confirms the alleged agent's actions *nunc pro tunc* to the date of the original contractual act. (3 Am.Jur.2d, Agency § 160, p. 548).

Defendant's response would undoubtedly be that if indeed there were any ratification by the phone call, as a matter of law that phone conversation occurred in Florida where the defendant's vice-president received it, thus eliminating the necessary contact with this jurisdiction. *Margoles, supra.*

However, the Court in *Margoles* was very careful to distinguish that case, which was an action for slander based in tort, from the "transacting business" cases. The Court noted that what may be insufficient to establish jurisdiction in a tort action may suffice in a breach of contract case. In the very paragraph which follows the one cited in defend-

ant's brief (*Margoles, supra,* at 1218), the Court states as follows:

"   .   .   These cases hold that an individual may 'transact business' in a state, although not physically present therein, through telephone calls made into that state. In *Parke-Bernet* [26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N. E.2d 506] for instance, the defendant's participation in an auction through the use of a California-New York telephone hookup subjected him to jurisdiction under New York's long-arm statute (specifically that provision dealing with 'transacting business' within the jurisdiction), in a breach of contract action arising out of purchase contracts made by the defendant during the auction. It should be noted that the 'transacting business' sections have generally been given broad interpretation, normally limited only by due process considerations, and meaningful guidelines have been established by the Supreme Court to determine in a commercial setting the limits of due process .   .   . The Uniform Act itself recognizes this, for the Commissioner's Note regarding section (a)(1), the 'transacting business' section, states that '[t]his provision [(a)(1)] should be given the same expansive interpretation that was intended by the draftsmen of the Illinois Act and has been given by the courts of that state.' 9B Uniform Laws Annot. at 310–11 (1966)."

■ The Court therefore concludes, without in any way ruling on the merits, that a complaint which alleges that a phone conversation acted as a ratification of an agent's contract made between two parties physically present in the District of Columbia is sufficient within the meaning of the § 423(a)(1) "transacting business" test to invoke the long-arm jurisdiction of this Court.

II.

The second of defendant's motions states that the complaint fails to allege a

legal contract upon which relief can be granted. Defendant says that as a matter of law whatever agreement was reached between Goldberg and plaintiffs never rose to the level of a contract because the necessary definite terms are too vague, uncertain and incomplete.

Defendant points out that the complaint states that after Goldberg presented this deal to plaintiffs, they called Mr. Blatt in Florida because they required ". . . further and more detailed information from defendant concerning the subject real property and possible terms of sale." From this statement, defendant infers that elements of a binding contract such as time of performance, price to be paid, work to be done, etc. were lacking, and therefore as a matter of law, no binding contract was entered. Defendant contends that this is the necessary inference because plaintiffs have not specified these elements in their complaint.

It appears to the Court that a fair reading of the complaint supports plaintiffs' position that they have sufficiently alleged that a contract was offered and accepted. Subsequently, plaintiffs made inquiries concerning more detailed descriptions of the land and the exact terms of investment or sale which the defendant would accept.

Viewing the case in this posture, the Court cannot rule that as a matter of law no binding contract was entered into.

It is well established that the Federal Rules of Civil Procedure are based on the theory that complaints operate as notice pleading.[1] A complaint upon which relief may be granted need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place and circumstances of the alleged occurrences and which, if later proven to the required legal degree, will justify some form of relief.[2] As alleged in the complaint herein, plaintiffs contend that a named individual offered a contract for real estate brokerage concerning specified property and alleges the time, place and circumstances surrounding the offer and acceptance. They need not allege *every* element of a binding contract to escape a Rule 12(b)(6) motion.[3]

The Court thus concludes that defendant's motion to dismiss should be and is denied.

### III.

The third of defendant's motions concerns choice of law. It is defendant's position that the case law of the District of Columbia directs this Court to apply the substantive law of Florida, which would clearly result in a dismissal of this action. It is undisputed that § 475.41 of the Florida Statutes, F.S.A., precludes recovery of a real estate sales commission for the sale of Florida land unless the real estate broker is duly registered and licensed by the State of Florida.[4] The plaintiffs are not now, and were not during the period in question, registered real estate brokers in the State of Florida.

Defendant's conclusion that Florida law must be applied is reached by the following process: First, defendant argues that the conflict of laws standard applicable in the District of Columbia is "interest analysis", which requires a sorting out of the different "significant contacts with this controversy" which each jurisdiction has "in an attempt to determine the relationship of each jurisdiction to the controversy, and to evaluate the interest of each in the application of its own rule of law." Mazza v. Mazza, 154 U.S.App.D.C. 274, 475 F.2d 385, 387–388 (1973).

---

1. Wright, Federal Courts, § 68, p. 247–50

2. *Supra*, at 247–48

3. Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)

4. Wegmann v. Mannino, 253 F.2d 627 (5th Cir. 1958)

In the application of this test, when there is a conflict of laws problem involving contract rights, the determinative law is the place of performance. Fox-Greenwald Sheet Metal Co. v. Markowitz Bros., Inc., 147 U.S.App.D.C. 14, 452 F.2d 1346, 1354 (1971).

In defining the place of performance, the Court in *Fox-Greenwald* quoted the Restatement 2nd, Conflict of Laws, § 196 (1971), which says in pertinent part ". . . the local law of the state where the contract requires that the services or, a major portion of the services . . ." be rendered should control questions of the validity of the contract.

Defendant further quotes the Restatement 2nd to the effect that in applying the above definition to land contracts, the situs of the land is of major significance and if the parties thought about the matter at all, they would probably have intended that the law of the situs should apply.

Finally, defendant cites Pratt v. Sloan, 41 Ga.App. 150, 152 S.E. 275 (1930), which held that a Florida real estate agent could not recover its sales commission against a Georgia landowner for the sale of Florida land because the real estate agent was not duly registered in Florida. Suit was filed in Georgia and the Court there applied Florida law as the place of performance for the contract. § 475.41 was in effect at that time, thereby precluding any recovery.

Defendant concludes by pointing out that the land herein is in Florida and the eventual purchaser is a Floridian. Therefore, the contract was to be performed, and in fact was performed, in Florida and therefore Florida law must apply.

It is the opinion of the Court that the situs of the land is the crux of defendant's argument. Contracts with the State of Florida and Florida's possible interests in applying its real estate bro-

ker registration law are all dependent on the fact that the land involved herein is situated in Florida. The Court therefore concludes that this choice of law question will best be resolved by focusing on the relationship of the situs of the land to a real estate brokerage contract.

The Supreme Court was faced with that same issue in Selover, Bates & Co. v. Walsh, 226 U.S. 112, 33 S.Ct. 69, 57 L.Ed. 146 (1912) wherein the defendant sought to employ Colorado law as controlling the construction of a land sales contract because the land was situated in Colorado. The contract was made in Minnesota. The Supreme Court concluded that such actions are personal in nature. No remedies are sought against the land; it does not affect title, possession or any right in the land. As a personal contract action, the law of Minnesota, the place of contracting, was held to be decisive.[5]

The Supreme Court's position in Selover, Bates & Co., *supra,* is regarded as the well-established majority opinion in the state courts as succinctly stated in the American Law Reports as follows:

"A real estate broker of one state who engages in isolated instances in selling real estate in another state is not subject to the statutory requirements of the latter state as to the necessity for procuring a license as a real estate broker; and, if he is duly licensed according to the laws of the state where the contract of employment is made, he may recover his commissions notwithstanding the fact that he is not licensed according to the law of either the situs of the property or the state of the forum, if the forum is in a different state."[6]

The District of Columbia Court of Appeals also recognized the lack of any controlling connections between the law of the situs of the land and a real estate brokerage contract in Formant v. Bell,

---

5. Selover, Bates & Co. v. Walsh, 226 U.S. 112, 123, 33 S.Ct. 69, 57 L.Ed. 146 (1912)

6. 159 American Law Reports, § 274(f)

250 A.2d 565, 566 (D.C.1969) wherein the court said:

> "Where the land is situated in one state, that state's statute relating to real estate brokers is inapplicable to a broker or salesman of another state who has entered into a brokerage contract in his own state for the sale of land in such other state."

It is clear to the Court from the above citations that the rigidity of unquestioned deference to the law of the situs whenever land is involved has been uniformly rejected where the situs is only collateral to the main issues of the case.

■ The Court therefore concludes that the situs of the land is a controlling "contact" only when questions of title, succession or some other direct interest in land are involved. Otherwise, it is just another contact which should not be given any special weight.

■ The clear import of the record thus far made in this case is that plaintiffs were to seek possible investors or buyers from a wide geographical range. In fact, prospective buyers from many Eastern states were apparently registered with the defendant. The contract was thus performed in D.C., Florida and a number of other states. It was purely fortuitous that the eventual purchaser was from Florida, and therefore that contact is also not a controlling factor.

In the Court's opinion, the contacts are relatively balanced and none are of controlling significance.

Although the Court agrees with *Fox-Greenwald* and *Selover, Bates & Co.* that the law of the place of performance should be controlling, it is clear that in the real estate investment business, and particularly in this case, the contract was to be "performed" in any number of jurisdictions. Plaintiffs' office and main place of business is in the District of Columbia; prospective buyers were sought from many states and finally the land was shown in Florida. Place of performance is a difficult concept at best, but virtually meaningless in this case. The Court must thus look elsewhere to determine the proper choice of law.

What remains after all the chaff is removed is Florida's interest in registering real estate brokers as expressed in § 475.41 of the Florida Statutes, F.S.A., and D.C.'s interest in insuring that contracts formed in D.C. are faithfully performed. But as noted in *Mazza, supra,*

> "Objections to application of foreign law would be justified if this analysis were to disclose that important interests of the forum would be sacrificed to advance equal or lesser interests of another jurisdiction . . . ."[7]

■ The Court finds that Florida's law is intended to protect the Florida land purchasing community from disreputable real estate dealers, primarily local dealers. If the plaintiffs sought out the defendant in Florida and actively proposed business deals in Florida, then Florida's registration law should be given extra-territorial effect in a suit filed in the District of Columbia. But in this case, the plaintiffs were approached by defendant's agent in D.C. and the contract was formed in D.C. to be performed in D.C., Florida and other Eastern states. In this fact situation, D.C.'s interest in insuring performance of this contract would be unduly hampered by the application of Florida law while not significantly advancing Florida's public policy. Whereas, if D.C. law is applied, performance can be insured with only a minimal compromise of Florida's interest.

D.C. law will thus govern this case and defendant's motion to the contrary is denied.

7. Mazza v. Mazza, 154 U.S.App.D.C. 274, 475 F.2d 385, 391 (1973).

## IV.

Finally, defendant has also moved to preclude the plaintiffs from relying in any way upon the activities of Lester Goldberg, Esq. Essentially, defendant contends that because of the attorney-client relationship between the defendant and Lester Goldberg, any and all statements made by Mr. Goldberg are in violation of the confidential nature of that relationship. Therefore, such evidence should be excluded from the record of this case and be given no consideration whatever either for jurisdictional purposes or on the merits.

More specifically, defendant alleges as grounds for this course of action that (1) Goldberg has disregarded the attorney-client privilege; (2) he has accepted compensation for services allegedly performed for defendant from another party whose interest was and is adverse to defendant; (3) he has solicited legal business; and (4) he has given the appearance of professional impropriety.

It is the opinion of the Court that only allegation (1) above, if proven, would be sufficient grounds for excluding Goldberg's testimony as defendant has moved. As to allegations (2), (3) and (4), all that the Court need say is that defendant is perfectly free to raise these points at trial to attack Goldberg's credibility, but the Court finds them to be insufficient grounds for the relief sought.

Defendant states that at various points in Goldberg's deposition, he characterizes his relationship with the defendant as one of attorney-client and that he specifically rejected the characterization of real estate broker.

In revealing to the plaintiffs the conversations held with Jack Blatt, defendant's vice-president, and in cooperating with plaintiffs' counsel in this case, Goldberg has allegedly violated the attorney-client privilege.

The Court finds that the key to this controversy is the nature of the communications revealed. The Court also confines itself to analyzing statements made by Goldberg to plaintiffs which are elements of the Court's assumption of jurisdiction. The exclusion of testimony which reaches only the merits of this action can be addressed as becomes necessary during the trial.

Goldberg's deposition indicates that, according to Goldberg, he was to act as a finder for possible investors or buyers. Goldberg concluded from his meeting with Mr. Blatt on May 24, 1969, that this included the solicitation of other finders as well. It was Goldberg's further interpretation of his meeting with Mr. Blatt that the types of information communicated by Mr. Blatt were intended to be revealed to the public and not to be kept confidential.

There is ample support for the proposition that the attorney-client relationship is not an absolute bar to the revelation of communications between the defendant and Goldberg. What is also necessary is that the communications be of a confidential nature. The Court concludes that Vol. 58 of American Jurisprudence succinctly states this point:

"Sec. 490. Generally—the law does not regard it as necessary for the protection of a client against the disclosure of communications made to his attorney that his communications be made to the attorney under injunctions of secrecy; it is sufficient in this respect that a relation of attorney and client subsists between the parties. However, in order that the rule as to privileged communications between attorney and client or its reason shall apply, it is necessary that the communication by the client to the attorney or his clerk be confidential, and be intended as confidential. The communication must be made in confidence for the purposes of the relation of attorney and client. If it appears by extraneous evidence, or from the nature of the transaction or communication, that confidence was not contemplated and that the communication

was not regarded as confidential, then testimony of the attorney or client may be compelled  .   .   ."

. It is thus the Court's conclusion that rather than an intention of confidentiality, the reverse is true.  Dissemination to the public was clearly defendant's intent.  Defendant's motion to preclude reliance on Lester Goldberg's testimony is thus denied.