Rosser H. PAYNE et al., Appellants,

v.

B. Austin NEWTON, Jr., Administrator, Estate of Beulah E. Payne, et al., Appellees.

Nos. 17614, 17615.

United States Court of Appeals District of Columbia Circuit.

Argued June 14, 1963.

Decided Sept. 19, 1963.

Petition for Rehearing En Banc Denied Oct. 22, 1963.

Petition for Rehearing by the Division Denied Oct. 22, 1963.

Mr. Donald K. Graham, Washington, D. C., with whom Messrs. Frank J. Whalen, Jr., and Robert P. Forrestal, Washington, D. C., were on the brief, for appellants.

Mr. Wesley E. McDonald, Washington, D. C., for appellee, Newton, Administrator of the Estate of Beulah E. Payne.

Messrs. William T. Pace and William H. McCullough, Mt. Rainier, Md., entered appearances for appellee, Jett, Executor.

Before DANAHER, WRIGHT and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

These appeals may, in our view, be disposed of by reference to a single issue. That is whether, under the circumstances here involved, the right of a surviving incompetent widow to renounce her husband's will continues beyond her own death. For the reasons set forth hereinafter, we hold that it does not.

I

James B. Payne, a resident of the District of Columbia, died on February 14, 1962. He was survived by his widow, Beulah E. Payne, and by the appellants, a brother and three sisters of the decedent. The marriage, of nearly 50 years' duration, was saddened by the fact that in 1950 the wife suffered a stroke which left her thereafter unable to walk or talk. In that condition, she died on June 30, 1962. She was adjudicated incompetent in 1951, and after a six-months' commitment to St. Elizabeths, she was permitted to return home where she was cared for by her husband and one of his sisters.

A 1959 will of James Payne was admitted to probate on May 21, 1962—some six weeks before the widow's death. The estate consisted of approximately $106,000 in stocks and bank accounts. The widow was given a life estate in this property, the income to be devoted to her support and the remainder interest on her death to go to appellants. In addition, the widow received outright the family home, valued at $10,000, Series E bonds amounting to $500, and certain social security benefits. All of this property had accumulated from the earnings of James Payne and from an inheritance received from a deceased brother in 1951.

After James Payne's death, appellee Newton was, on March 9, 1962, appointed guardian *ad litem* for the widow. He reported in this capacity on April 4, 1962, and, on April 26, 1962, he was appointed guardian *ad litem* for the widow in the administration of James Payne's estate. On May 18, 1962, he reported that no reason was known to him why the will of James Payne should not be admitted to probate. Newton was also appointed committee for Beulah Payne on April 11, 1962, and continued as such until her death on June 30, 1962. No action was taken by him to effect renunciation of the will prior to her death, but, after having been appointed administrator of the estate of Beulah Payne on August 8, 1962, he filed a petition on September 11, 1962, for authority to renounce the will. Appellants answered the petition and, after hearing, the District Court authorized renunciation on November 30, 1962. This is one of the orders appealed from. The other was one entered on January 15, 1963, denying, after hearing, a motion by appellants to prohibit the filing of a renunciation. The renunciation was filed on January 15, 1963.

The right of a surviving widow to renounce her husband's will is provided by

statute in the District of Columbia. D.C. Code § 18–211, as amended by the Act of September 14, 1961, 75 Stat. 516, Pub.L. 87–246, Sec. 4. It provides generally that a surviving widow may renounce the will of a deceased spouse by filing a written renunciation in the probate court within six months after the will is probated. The only specific reference in the statute to the circumstances of incompetency is contained in this sentence:

"A renunciation or election may be made in behalf of any spouse unable to act for himself or herself by reason of infancy, incompetency, or inability to manage his or her property, by the guardian or other fiduciary acting for such spouse when authorized so to do by the court having jurisdiction of the person of such spouse."

Except, therefore, for the need to secure court authorization, the statute does not distinguish between competent and incompetent spouses, and it is completely silent as to both in respect of whether the right to renounce continues after the death of the surviving spouse. Indeed, the language used in the section presupposes that the incompetent spouse is still alive.

## II

This court long ago held that, in the case of the competent widow, death terminates instantaneously and irrevocably the right to renounce the husband's will. Cahill v. Eberly, 59 App.D.C. 228, 38 F.2d 539 (1930). This decision reflected the widely-held view that the right to renounce is wholly personal in character and does not persist beyond the death of the person to whom the right attaches. More recently, we have recognized this principle in the case of the incompetent widow by holding that the right to renounce did not pass to the administrator of the widow's estate when the widow's personal representative had elected prior to her death not to seek authority to exercise it. Boyer v. Bealor, 106 U.S.App. D.C. 262, 271 F.2d 845 (1959). We said there that "[t]he incompetent widow's

administrator has no such authority [to renounce], because the widow herself had no such 'right' when she died."

. If the right is personal in the one case, we fail to see why it partakes of a different nature in the other. The only difference in the situations is that the competent widow speaks directly for herself while, in the other, she speaks through a personal representative. The traditional justification for the right is the same in both cases, that is to say, the surviving widow is entitled to appraise the provision made for her in the will and to decide whether she prefers to have a different measure of property to enjoy personally during her lifetime. With her death prior to election, this justification disappears. She can no longer be affected in her rights of enjoyment because she has disappeared from the scene and, in this event, there is no justification for frustrating the purposes which the testator pursued in the disposition of his property.

This lack of justification emerges sharply on the facts before us. James Payne's devotion to the best interests of his wife is eloquently testified to, first, by the years of care he gave to a wife whose condition was sadly precarious, and, second, by the thoughtful provision he made in his will to take care of her after his death. The income from his entire estate was made available to her so long as she should live. Only upon her death—and with the disappearance of her need—was the property to go to his own blood relations, the natural objects of solicitude by him second only to his wife. The truly contending parties in interest now before us are appellants— the testator's brother and sisters—and the widow's sister who, although unrelated to the testator, will receive about one-half of his estate if the decision below stands. We cannot say that the right of renunciation was intended to effect any such result.

It is said that affirmance is commanded by this court's decision in Mead v. Phillips, 77 U.S.App.D.C. 365, 135 F.2d 819 (1943), and that a reversal of the

decision below necessarily involves overruling that case. We do not agree. In Mead, there was presented the problem of the surviving incompetent widow, but in a context wholly different from the one now before us. There, the testator provided life estates for his incompetent widow, with remainder over to his two sisters and certain other of his own relations. One of the sisters served as the personal representative of the widow. For five years after the probate of the will, the sister took no action to make a renunciation on the widow's behalf. With the death of the widow, a new representative appeared in the person of her administratrix, and the latter instituted a suit to recover for the widow's estate that share of the testator's property which would have come upon a renunciation of the will. This court overturned a dismissal of the complaint, and this action is urged upon us as conclusive here.

But Mead involved circumstances not now before us. This court was struck by the fact that the personal representative in Mead, being the sister and a principal heir of the testator, occupied a dubious position indeed in terms of her faithful representation of the incompetent widow. Every consideration of personal interest pointed against a renunciation insofar as the sister was concerned and, in substance, it could be said, as this court did say, that, so long as the widow lived with only the sister to speak for her, there was a situation formidably fraught with all the familiar dangers of fraud, concealment, and conflicting adverse interest. What we held was that, on those facts, a court of equity might well intervene to treat as done within the span of the widow's life something which, for improper reasons, was not done.

Here there is no showing, nor even any intimation, of such an unacceptable reason for failure to renounce. We have no element whatsoever of possible fraud or overreaching. We accept the explanation tendered on the record that renunciation was not effected solely because the widow died before there was a reasonably lengthy opportunity to accomplish renunciation. But this furnishes no foundation for converting a purely personal right into an impersonal property right which becomes an asset of the widow's estate in derogation of the reasonable testamentary aims and intentions of the husband.

We do not overrule Mead, but, in common with other courts and the comments of informed authorities, we limit it to its special facts. See, e. g., Rock Island Bank & Trust Co. v. First Nat'l. Bank, 26 Ill.2d 47, 185 N.E.2d 890 (1962); Grammar v. Bourke, 117 Ind.App. 151, 70 N.E.2d 198 (1946); Vanderlinde v. Bankers Trust Co., 270 Mich. 599, 259 N.W. 337 (1935); Annots., 74 A.L.R. 452, 462 (1931), 147 A.L.R. 336, 346 (1943); Friedman, The Renounceable Will: The Problem of the Incompetent Spouse, 1958 Wisc.L.Rev. 400, 402–03, n. 11. Incompetent spouses may be protected against improper or disloyal representation of their interests, in the field of will-renunciation as elsewhere. But the giving of relief in appropriate cases of this kind does not necessitate a broad alteration of the nature of the right of renunciation in the normal case. We do not construe the statute in the District of Columbia as making a distinction between competent and incompetent spouses insofar as the personal character of the right of renunciation is concerned. With the death of the incompetent spouse, it is gone, as surely as is true in the case of the competent spouse. To hold otherwise, absent any showing of imposition upon the incompetent, is to import into the decision to renounce a set of considerations revolving around interests which the right was not designed to advance. We do not believe the statute encompasses any such result.

Accordingly, we hold that the District Court had no authority to entertain the petition for authority to renounce, and the orders appealed from are reversed.

It is so ordered.