Harold SARBACHER, et al., Appellants,

v.

Martin J. McNAMARA, Appellee.

Martin J. McNAMARA, Appellant,

v.

Harold SARBACHER, et al., Appellees.

Nos. 88–1004, 88–1095.

District of Columbia Court of Appeals.

Argued July 11, 1989.
Decided Sept. 13, 1989.

Richard A. Green, Washington, D.C., for appellants/cross-appellees.

Nancy G. Fax, with whom Martin J. McNamara, Washington, D.C., was on the brief, for appellee/cross-appellant.

Before ROGERS, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

ROGERS, Chief Judge:

Appellants/cross-appellees Harold Sarbacher and John Cannady (Appellants), as representatives of the estate of Vivian Lea Hall, and appellee/cross-appellant Martin J. McNamara (Appellee), as representative of the estate of Irving P. Hall, filed cross-appeals from summary judgments that the estate of Irving Hall was (1) entitled to his statutory spousal share of the estate of his deceased wife Vivian Lea Hall (count I); (2) not entitled to contribution from her estate for payments of a monthly assessment on a cooperative apartment in the District of Columbia (count II), and (3) not entitled to contribution from her estate toward obligations to pay a mortgage debt on a Florida condominium (count III). We reverse the judgments on counts I and III and affirm the judgment on count II.

## I

The facts are undisputed. Vivian Lea Hall, a domiciliary of the District of Columbia, died testate and without issue on June 26, 1986. Eighteen days later, on July 14, 1986, her husband Irving P. Hall, also a domiciliary of the District of Columbia, died testate. He was survived by two children by his first marriage, Blair P. Hall and Barton Hall McGuire, who are beneficiaries under his will. The wills of both Vivian Hall and Irving Hall were offered for probate and administration in the Superior Court.

The sole bequest to Irving under Vivian's will was Item V, which read as follows:

To BARBARA HALL, my cousin of 288 Plain View Circle, North Little Rock, Arkansas, as Trustee in trust for the benefit of my husband, IRVING P. HALL, my apartment at number 810, Watergate West, 2700 Virginia Avenue, N.W., Washington, D.C., and any remaining stocks not specifically bequeathed hereafter. The income from said trust is to be paid to the beneficiary at the discretion of the Trustee. Upon the beneficiary's death, the trust shall terminate and the principal and accrued income thereof I give to BARBARA HALL.

In addition, Item IX stated:

I request that Betty Jean Bevan and family look in on my husband on a regular basis and if he is in need of anything, they are to contact Barbara Hall.

Irving died without filing a written renunciation of the will pursuant to D.C.Code § 19–113(a) (1981).

On August 1, 1986, two weeks after Irving's death, Vivian's will was offered for probate. On October 15, 1986, nearly four months after Vivian's death, Irving's estate, through appellee, filed a claim against Vivian's estate for his statutory spousal share of one-half Vivian's estate, which had an estimated gross value of $680,000.00. D.C.Code §§ 19–113(e) (legal share), 20–905 (1981) (claim). When Vivian's estate refused to acknowledge Irving's estate as "an interested party" in Vivian's petition for probate with rights and entitlement to her assets and the administration of her estate, appellee sought a declaratory judgment in three counts: count I that Irving's estate was entitled to his statutory share of Vivian's assets; count II that Irving's estate was entitled to receive contribution for payment of the monthly assessments on the cooperative apartment at the Watergate East jointly owned, with a right of survivorship, by Vivian and Irving at the time of her death, and count III that Irving's estate was entitled to contribution toward mortgage obligations on a Florida condominium which they had jointly purchased. The trial judge granted summary judgment to Irving's estate on count I and denied him summary judgment on counts II and III. Both parties appeal.[1]

---

1. *See Holland v. Hannan,* 456 A.2d 807 (D.C. 1983) (standard of review on appeal from grant

## II

■ *The statutory share.* The trial judge granted summary judgment for Irving's estate on its claim to his statutory share of Vivian's assets on the basis that no devise or bequest was made to Irving under Vivian's will. Appellants contend that the judge's finding was clearly erroneous because the trust under Item V of Vivian's will, while discretionary, constituted a "devise or bequest" within the meaning of D.C.Code § 19–113(a) (1981).[2] Since the right to renounce is a purely personal one, and Irving failed to file a renunciation during his lifetime, appellants maintain that his estate is only entitled to his bequest under Vivian's will and not to his spousal share. They rely on *Payne v. Newton*, 116 U.S.App.D.C. 319, 323 F.2d 621 (1963); *Cahill v. Eberly*, 59 App.D.C. 228, 38 F.2d 539 (1930). *See also* 5 Bowe–Parker: Page on Wills § 47.17 (1962).

It has long been held in this jurisdiction that the right to elect is personal to the surviving spouse:

> [T]he surviving [spouse] is entitled to appraise the provision made for her in the will and to decide whether she prefers to have a different measure of property to enjoy personally during her lifetime. With her death prior to election, this jurisdiction disappears. She can no longer be affected in her rights of enjoyment because she has disappeared from the scene and, in this event, there is no justification for frustrating the purposes which the testator pursued in the disposition of his property.

*Payne v. Newton, supra,* 116 U.S.App.D.C. at 321, 323 F.2d at 623. The purpose of the spousal share is to protect the surviving spouse from being disinherited. Election affords the surviving spouse the choice between taking what the deceased spouse bequeathed, or, in the alternative, electing the share to which he or she would be entitled under the law. The surviving spouse's choice always controls because that is the person whom the law creating spousal shares seeks to protect.[3] Accordingly, the question is whether Item V of Vivian's will constituted a bequest requiring a renunciation under § 19–113(a) for Irving's estate to be able to claim his statutory share.

■ Appellee contends that the purported bequest was illusory,[4] thereby making renunciation unnecessary under D.C.Code § 19–113(d) (1981), which provides:

> Where a decedent has not made a devise or bequest to the spouse, or *nothing passes* by a purported devise or bequest, the surviving spouse is entitled to his legal share of the real and personal estate of the deceased spouse without filing a written renunciation, but may, instead, elect to take dower.... [Emphasis added]

He likens this case to *Jordan v. American Sec. & Trust Co.,* 38 App.D.C. 391 (1912), in which the court held that, although the surviving spouse died without renouncing her share under the will, renunciation was unnecessary because a bequest of ten dollars was "nominal in character, and [ ] in effect nothing passed to the [surviving spouse] under the will." *Id.* at 398. Appellee distinguishes the purely discretionary trust in the instant case from the bequests in *Payne v. Newton, supra,* 116 U.S.App.D.C. at 320, 323 F.2d at 622,

---

of summary judgment); D.C.Code § 17–305(a) (1981).

2. D.C.Code § 19–113(a) (1981) provides:

... [A] surviving spouse is, by a devise or bequest specified in section 19–112 [of real estate or personal estate], barred on any statutory rights or interest he has in the real and personal estate of the deceased spouse ... unless, within six months after the will of the deceased spouse is admitted to probate, he filed in the Probate Court a written renunciation....

3. Appellee argues that because of Irving's incompetence, his appointed guardian would be authorized to act in his or her best interest. D.C.Code § 19–113(c) (1981). However, renunciation must still occur during the surviving spouse's lifetime, absent evidence of wrongdoing by the guardian. *Payne v. Newton, supra,* 116 U.S.App.D.C. at 321, 323 F.2d at 623 (limiting *Mead v. Phillips,* 77 U.S.App.D.C. 365, 135 F.2d 819 (1943) to its facts).

4. Appellee does not challenge the trust's validity, *see Cabaniss v. Cabaniss,* 464 A.2d 87 (D.C.1983), merely that it had no value to Irving.

where the income from the entire estate was bequeathed to the benefit of the surviving spouse for life, and *Cahill v. Eberly, supra,* 59 App.D.C. at 228, 38 F.2d at 539, where the trust income was to be paid to the surviving spouse in semiannual installments with her children as remaindermen. In both *Payne* and *Cahill,* appellee argues, the bequests were definite incomes from trust corpus, in contrast to the instant case, in which the beneficiary would receive only what the trustee in her discretion chose to disburse. Furthermore, he argues, the trustee (Barbara Hall) might have an incentive not to disburse any funds to the beneficiary since she is to receive whatever income remains at the time of the beneficiary's death. Therefore, appellee argues, because the trust does not ensure that Irving would actually receive anything under the will, it is purely illusory and renunciation is not required.

The trial judge based her ruling that there was no devise or bequest to Irving under Vivian's will on the erroneous factual premise that the Watergate West apartment, which formed the corpus of the trust along with some stocks, was jointly owned with a right of survivorship by both Vivian and Irving, and, therefore, the will attempted to bequeath what was already Irving's property. In fact, the Watergate West apartment was owned solely by Vivian, and Irving had no interest in it.[5] Appellee contends this error was harmless, however, since the trial judge had previously acknowledged that Vivian's stocks, in which Irving had no interest, were also part of the corpus of the trust. We disagree. Assuming the judge believed the trust corpus consisted solely of Vivian's stock, it would be clearly erroneous for the judge to find that the will thereby attempted to bequeath what was already Irving's property.

The trial judge based her ruling of no bequest or devise under Vivian's will on

the alternative ground that there existed the potential for a conflict of interest between Barbara Hall, the trustee, as the remainderman and Irving as the beneficiary of the lifetime trust, "not withstanding the lack of any allegation of mismanagement or lack of fiduciary responsibility within the 18 day life of the trust." We also find this alternative ground for finding the bequest illusory to be clearly erroneous.

The purposes of the statutory spousal share are to protect the surviving spouse and to secure a reasonable portion of the deceased spouse's estate. *Jordan, supra,* 38 App.D.C. at 394. The trial judge recognized this when she stated that "[t]he equitable power of this Court must avoid the disinheritance of one's surviving spouse." However, Vivian's will did not seek to disinherit Irving; on the contrary, both the express terms of Item IV, stating that the trust be maintained for his benefit, and Item IX, requesting certain individuals to "look in on [Irving] on a regular basis and if he is in need of anything" to contact the trustee, indicate Vivian's intent to provide for Irving's well-being during his lifetime. The holding in *Jordan, supra,* moreover, on which appellee relies, was expressly limited to the circumstances in which the deceased spouse erroneously stated in his request that his wife had already "been satisfactorily provided for some years ago," and thereby proceeded to bequeath her only ten dollars. *Id.* at 393.

Appellee's argument that Irving would not have a right to trust income except to accommodate his "need" misconstrues the standard to be applied in determining whether renunciation is necessary under § 19–113(d). Even if the trustee accumulated some income because of the provision that she was entitled, upon Irving's death, to "the principal and accrued income," the trust could have had value to Irving.[6] The

---

5. The trial judge apparently confused the Watergate West apartment, owned by Vivian, with the Watergate East apartment jointly owned by Vivian and Irving.

6. Because a trustee is subject to equitable duties as a result of the creation of the fiduciary rela-

tionship, *see Cabannis v. Cabannis, supra,* 464 A.2d at 91 (quoting *Restatement (Second) of Trusts* § 2 (1959)), under Item IX of Vivian's will, the trustee was legally obligated to disburse trust income to Irving if he had need of it. Given Irving's age, Vivian could reasonably anticipate that he would have needs. *See Grabois*

rental income from the Watergate West apartment was approximately $1,100 per month and the value of the stocks in the trust corpus was approximately $218,-000.00. The beneficiary need not actually receive trust income to render the bequest valuable; indeed, the request need not even be equivalent to or exceed the spousal share. *Cahill v. Eberly, supra*, 59 App. D.C. at 230, 38 F.2d at 541. The purported devise or bequest must have no value to the beneficiary or cause "nothing" to pass under the will in order for renunciation to be unnecessary under § 19–113(d).

■ The trial judge's rationale that Item XIII of the will added to the uncertainty of the bequest cannot withstand analysis.[7] Item XIII, a standard common disaster clause,[8] bespeaks no uncertainty of Irving's entitlement to a life estate, but simply required him to survive his wife for thirty days in order to be entitled to receive income under the trust in Vivian's will. The trial judge concluded that because of Item XIII, it was reasonable for Irving's estate to believe that nothing had actually passed under the will. However, a life estate in a trust vests at the time of the testator's death. The court held in *Cahill, supra*, 59 App.D.C. at 228, 38 F.2d at 549, that the spouse's "right to the trust income had 'passed' to her upon the decease of the testator, and could be divested only by her renunciation," although she died before the maturity of her first payment of income provided by the will. *Id.* at 230, 38 F.2d at 551. So, too, Irving had a life estate as a result of the right to have his needs met if he survived his wife by thirty days. To this extent it cannot be said that "nothing passes" in the sense that nothing could pass because the trust was valueless or invalid.[9] Thus, to obtain his statutory

share, Irving had to renounce his right under Vivian's will.

■ The trial judge also stated that Irving was precluded from filing a renunciation during his lifetime because Vivian's will had not yet been offered for probate. However, the beneficiary of a will may renounce a share under the will at any time, even before it is offered for probate. *Hutchins v. Dante*, 40 App.D.C. 262, 273 (1913). Appellee argues further that the statute on which *Hutchins* was based measured the time for filing a renunciation as "within six months after administration may be granted on her husband's estate," D.C.Code § 1173 (1911), whereas D.C.Code § 19–113(a) (1981) now reads, "within six months after the will of the deceased spouse is admitted to probate." In this different language appellee finds an intent to bar renunciation before a will is actually admitted to probate. We are unpersuaded by such a reading of the current statute. *Washington Gas Light Co. v. Public Serv. Comm'n of the District of Columbia*, 455 A.2d 384, 386 (D.C.1982) (ultimate responsibility of reviewing court to construe statutory language). The difference between the two statutes shows an intent to allow the surviving spouse greater time to renounce, setting a later date from which the six month limitation will be calculated; it does not indicate that a surviving spouse must await actual probate to renounce the will. *See District of Columbia v. Gantt*, 558 A.2d 1120, 1122–25 (D.C.1989) (creditor not barred from filing claim before notice of appointment of personal representative under will). To require such a waiting period may impose undue hardship on the surviving spouse who has received very little under the will and wishes instead to

---

v. *Grosner*, 124 U.S.App.D.C. 247, 250, 363 F.2d 979, 982 (1966) ("strong and clear language" necessary to permit accumulation over beneficiary's lifetime).

7. Item XIII of Vivian's will provided:
> ... if any beneficiary [under the will], though surviving me, should die within thirty (30) days from and after the date of my death, then such beneficiary shall be deemed to have pre-deceased me.

8. 2A Murphy's Will Clauses § A2 (e) (1988); Annotation, *Validity, Construction, and Application of Statutory Requirement That Will Beneficiary Survive Testatory for Specified Time*, 88 A.L.R.3d 1339 (1978).

9. *See* 5 Page on Wills, §§ 43.6 n. 1, 7, 43.10 n. 2 (1962). *See also Rusch v. Melosh*, 133 N.J.Eq. 502, 510, 33 A.2d 390, 395 (1943), *aff'd*, 134 N.J.Eq. 409, 36 A.2d 8 (1944) (law favors early vesting).

elect the spousal share. Since election of the spousal share and the opportunity to renounce the share under the will are designed primarily to protect the surviving spouse, we have no basis to read the statute as imposing more restrictions than are readily apparent on their face.

### III.

■ *Contribution on District of Columbia cooperative apartment.* Appellee maintains that under *White v. Parnell*, 130 U.S.App.D.C. 148, 397 F.2d 709 (1968), Vivian's estate must contribute one-half of the pro-rated share of the remaining mortgage obligation for the Watergate East under the Proprietary Lease and Occupancy Agreement. *White v. Parnell* held that the estate of the deceased spouse was liable for one-half the unpaid balance on two jointly executed promissory notes, even though the surviving spouse took the property through his right of survivorship under deeds of trust which were security for the notes. *Id.* 130 U.S.App.D.C. at 149, 397 F.2d at 710. The trial judge found that, unlike *White v. Parnell*, there was no evidence separate and apart from the cooperative agreement itself indicating that Vivian and Irving assumed an obligation to pay off a note or other obligation of indebtedness, and therefore Irving's estate was not entitled to contribution from Vivian's estate for the cooperative apartment.

On October 25, 1965, Vivian and Irving entered into the Proprietary Lease and Occupancy Agreement and became owners of the Watergate East cooperative apartment (Agreement). Through an Assignment and Assumption Agreement dated March 18, 1971, they transferred the apartment to themselves as joint tenants with the right of survivorship. Upon Vivian's death, therefore, Irving became the sole owner of the proprietary right to the apartment.

Appellee contends that the Agreement provides the necessary evidence of the existence of a note or similar indebtedness. While recognizing that the cooperative, not its individual members, is directly liable on the mortgage to the lender, appellee nevertheless maintains that all members of the cooperative are obliged to pay the outstanding principal balance of their allocable share of the cooperative's mortgage debt through a part of their monthly assessments. This obligation, appellee argues, constitutes an assumption of indebtedness akin to the promissory notes in *White v. Parnell, supra,* 130 U.S.App.D.C. at 148, 397 F.2d at 709, for which the estate of the deceased spouse was held liable. We disagree.

A member of a cooperative owns shares in the cooperative, making the member a co-owner of the property along with the other members. *Snowden v. Benning Heights Cooperative, Inc.,* 557 A.2d 151, 156 (D.C.1989). It is true, as the trial judge recognized, that the Agreement describes the members' obligation to pay monthly assessments, which include "principal and interest payments on mortgages, deeds of trust, or any other indebtedness." Furthermore, the Agreement allows a member to pay all or a portion of the allocated mortgage value in advance of the term, reducing monthly assessments accordingly. But while the Agreement sets forth an obligation of indebtedness for the pro rata share of the mortgage on the cooperative property, the debt runs with the property and, as the trial judge found there is no evidence of a separate obligation of indebtedness. The obligation of the owner of shares in this cooperative differs from most debts evidenced by promissory notes since the cooperative has no right to accelerate the share owner's obligation and require payment of the entire mortgage value in the event of default; the share owner's obligation extends only to the arrearages for monthly payments. Under *White v. Parnell,* therefore, appellee is not entitled to contribution from Vivian's estate for one-half of the outstanding mortgage obligation on the cooperative apartment.

### IV.

■ *Contribution on Florida condominium.* Appellee similarly sought contribution from Vivian's estate on the mortgage debt on the Florida condominium, a

result which depends on whether District of Columbia or Florida law applies. Under District of Columbia law, as enunciated in *White v. Parnell*, appellee would be entitled to contribution. The trial judge, however, applied Florida law in concluding that appellee was not entitled to contribution because the mortgage note was executed in Florida and the mortgage payments were to be made there. *DeBose v. Los Angeles Teachers Credit Union*, 129 A.2d 700, 701 (D.C.1957). Moreover, the property was located in Florida, the mortgage was governed by Florida law, and the lender was a Florida bank. Appellants argue, furthermore, that appellee has accepted the judge's application of Florida law (that a conveyance to two persons who are in fact married creates a tenancy by the entirety) in ruling that appellee is the sole owner of the Florida condominium. The result under District of Columbia law would have been to the contrary because Vivian and Irving jointly purchased the Florida condominium but their purchase agreement did not specify whether they were tenants in common or joint tenants. *See* D.C.Code § 45–216 (1981).

Appellee maintains that, consistent with the District's conflict of laws jurisprudence, *see, e.g., Zhou v. Jennifer Mall Restaurant, Inc.*, 534 A.2d 1268, 1270 (D.C. 1987); *Mazza v. Mazza*, 154 U.S.App.D.C. 274, 277, 475 F.2d 385, 388 (1973), the trial judge should have applied the "governmental interest analysis" in determining which jurisdiction's law should apply. Under this analysis, appellee contends, Florida has no interest whatsoever in the outcome of this litigation. Although the lender was a Florida bank and the mortgage was governed by Florida law, appellee contends that the dispute concerns contribution between the co-obligors, Irving and Vivian, and does not directly involve the lender, the property, or the mortgage. Appellee further maintains that the District of Columbia has a great interest since both Irving and Vivian were residents of the District of Columbia, and their estates are being probated here; therefore, District of Columbia law should apply.[10]

Admittedly, Florida law is an integral part of Vivian and Irving's relationship to the condominium. But while the mortgage states that Florida law is to apply and the note refers to the terms in the mortgage with respect to acceleration, it does not necessarily follow that Florida law is to apply to all aspects of the property and the Halls' relationship to it. By their own terms, the note and the mortgage are severable. Thus, even though the property is located in Florida, the mortgage was written there and the mortgage payments were to be made to a Florida bank governed by Florida law, *see DeBose, supra*, and appellee gained ownership of the condominium through a right of survivorship granted by Florida law, the matter at issue is between co-obligors of a note. The co-obligors were residents of the District of Columbia for a long period of time, and their estates are being probated here. The settling of debts between District of Columbia domiciliaries appears to us to be of paramount interest to the District of Columbia and questions of contribution more appropriately controlled by what its law says is fair. Were the laws of the two jurisdictions reversed—so that Florida required contribution and District of Columbia law did not—it would be difficult to conceive of a circumstance in which we would conclude that Florida law would control the right of contribution between District of Columbia domiciliaries who are co-obligors on a note. Because the note of indebtedness is separate from the mortgage deed, Irving's estate is entitled under *White v. Parnell* to receive contribution from Vivian's estate on the unpaid balance of the mortgage. In so holding we do no violence to "a strong and clearly defined local policy" in Florida adopting a

---

10. Appellee also maintained that District of Columbia law should apply because the assumption of indebtedness was signed in the District of Columbia. Appellants have disputed whether the assumption of indebtedness was actually signed in the District of Columbia since the printed words, "Palm Beach, Florida" were crossed out and "Wash., D.C." handwritten in. For purposes of our holding, we need not resolve this factual issue.

rule contrary to that of *White v. Parnell*,[11] and are in accord with the concern in *Mazza v. Mazza, supra,* 154 U.S.App.D.C. at 278, 475 F.2d at 390, that there be uniform treatment of all beneficiaries of an estate even though appellee is not relying on Vivian's will in claiming either an interest in the Florida condominium or contribution for the mortgage.

Accordingly, the judgment for appellee on count I is reversed, the judgment for appellants on count II is affirmed, and the judgment for appellants on count III is reversed.

---

11. The Florida Supreme Court stated in *Lopez v. Lopez,* 90 So.2d 456, 458 (Fla.1956):

It is in our opinion unconscionable and inequitable to allow the law to take from one his interest in lands, yet hold him responsible for a part of the purchase price thereof which remains unpaid.